725 P.2d 844

**In the Matter of the TERMINATION OF PARENTAL RIGHTS OF REUBEN AND ELIZABETH O. With Respect to Vincent O., Alexandria O. and Yvette O., Children, Respondents-Appellants,**

**v.**

**DEPARTMENT OF HUMAN SERVICES, Petitioner-Appellee.**

No. 8598.

Court of Appeals of New Mexico.

March 25, 1986.

Paul G. Bardacke, Atty. Gen., Richard Rubin, Gen. Counsel, Dept. of Human Services, Santa Fe, Elaine Watson, Sp. Asst. Atty. Gen., Albuquerque, for petitioner-appellee.

Frank A. Baca, Albuquerque, for respondents-appellants.

Thomas J. Horne, Albuquerque, guardian ad litem.

**OPINION**

DONNELLY, Judge.

Respondents appeal from an order of the trial court legally terminating their rights as parents to three minor children and placing legal custody of the children in the Department of Human Services (Department) for purposes of adoption. Respondents raise three issues on appeal: (1) claim of failure by the Department to exercise reasonable efforts to assist respondents to care for their children; (2) error in admission of evidence; and (3) sufficiency of the evidence. We affirm.

While this case was on appeal, both the Adoption Act (NMSA 1978, §§ 40-7-1 to -19, enacted by 1971 N.M. Laws, ch. 222 and the Children's Code NMSA 1978, §§ 32-1-1 to -45, enacted by 1972 N.M. Laws, ch. 97, §§ 1 to 45) were amended. *See* NMSA 1978, §§ 40-7-29 to -61 (Cum. Supp.1985); NMSA 1978, §§ 32-1-1 to -55 (Cum.Supp.1985). All citations in this opinion refer to the controlling statutory provisions governing termination of parental rights at the time of trial. *See* NMSA 1978, § 40-7-4 (Repl.Pamp.1983); NMSA 1978, § 32-1-3(L) (Repl.Pamp.1981).

**FACTS**

Respondents are the parents of three children: a son, Vincent, age 9, and two daughters, Alexandria, age 10 and Yvette, age 13. Reuben is not the natural father of Yvette, but he adopted her following his marriage to Elizabeth. Respondents have been addicted to the use of heroin for a number of years. Testimony presented at trial reveals that respondents' dependency upon heroin caused them to commit crimes to support their addiction. As a result of their criminal acts, respondents have been convicted of criminal offenses and incarcerated. Reuben has been adjudicated as an habitual criminal.

Proceedings to terminate the parental rights of respondents were initiated immediately before the couple's last incarceration. During periods of confinement, when respondents have been incapable of caring

for their children, the three children have been placed in the homes of relatives. The relatives, in whose homes the children have been placed, have sought to adopt the children. The mother of Reuben petitioned to adopt respondents' son and the first cousin of Elizabeth seeks to adopt the two daughters. Respondents have withheld their consent and are opposed to the adoptions.

The Department became involved in this case in May 1975, following reports from respondents' relatives concerning the heroin addiction of the parents and the resultant neglect of the children. Respondents were imprisoned in 1976, following convictions for commission of several criminal offenses. While respondents were incarcerated, their children were placed in the custody of the Department. Following the release of respondents from prison, the Department provided the family with therapy and arranged a program of counseling.

Despite efforts by the Department to encourage respondents' participation in therapy, counseling and a drug rehabilitation program, respondents' involvement in the program was sporatic. Efforts at counseling were not successful. The Department attempted to assist respondents from May 1975 to August 1980. During the incarceration of respondents in 1976, the Department obtained custody of the children. After the parents' release from prison, the family was reunited, and the Department closed the family's case in 1980. In September 1983, when respondents were reincarcerated, the Department again became involved with the family.

Respondents were released from prison in December 1983. When they were released, respondents enrolled in a program that provided them drug counseling. Their attendance, however, was poor, and the counseling was not successful. Following their release and until April 1984, the Department again attempted to assist the family with a program of counseling. In January 1984, respondents entered into a consent decree. The decree recited that Elizabeth had a ten-year history of drug abuse and criminal activity, that Reuben was a drug user, and that the children were neglected.

The Department had no direct contact with respondents from February 1984 until April 1984, although the Department tried to reestablish contact. The Department's efforts included sending registered mail to respondents' last known address and unsuccessfully trying to locate them through relatives. The Department sought to encourage regular visitation by respondents with their children.

Immediately preceding his reincarceration in June 1984, Reuben failed to keep in contact with his parole officer. During this period, Elizabeth was involved in a shoplifting incident of property in excess of $100. Paroles of both respondents were revoked, and both returned to prison by June 1984. These events culminated in the Department's decision to seek termination of respondents' parental rights and to free the children for adoption.

As a result of drug addiction, Reuben was hospitalized twice for narcotics overdoses, and Elizabeth's arm became severely infected from an injection. Respondents sold a home which had been given to them by Reuben's mother and dissipated the money. At times, Reuben's mother had to pay the family's rent and buy their groceries. Testimony at the hearing indicated that the children have observed the drug-induced behavior of their parents and watched them use drugs. The children have expressed fear of their father and have seen him abuse their mother. Prior to placement in foster homes, the children had very poor attendance in school.

After a hearing on the petition to terminate parental rights, the court adopted findings of fact and conclusions of law in April 1985. It found that the children had been in the legal and physical custody of the Department since November 10, 1983, and that a psychological parent-child bond had developed between the children and their foster parents. The court also found that the children's "parents have a long and extensive history of drug abuse, unstable life style, criminal activity, incarcera-

tions and criminal convictions." Additionally, the court found that although respondents had expressed their intention in the past to make the changes needed to become proper parents to their children, they had failed to make those changes. Based on its findings, the court concluded that: "it is unlikely that [respondents] will make the necessary changes." The court determined that even if respondents did seek to change, it would take at least two years to accomplish this goal and assume their proper role as parents.

The court further found that: (1) respondents exposed their children to drug abuse and criminal activity; (2) respondents failed to provide for the children's physical and emotional needs; (3) as a result of respondents' conduct, the children exhibited predelinquent behavior and suffered from emotional problems; and (4) as a result of respondents' conduct, "the children were and are neglected and abused." Based upon its findings, the court ordered that respondents' parental rights be terminated.

## I. EFFORTS OF REHABILITATION

In finding of fact No. 15, the court found that the "Department * * * and other[s] * * * made many attempts to help the parents [end] their drug abuse, curb their criminal behavior and stabilize their lives, but the efforts have been unsuccessful because of the faults of the parents."

Respondents contend that the Department did not expend sufficient time or effort to help them overcome their problems. Respondents also attack the court's finding that they would be unable to change their lives so as to properly care for their children. They assert that they had a suitable plan for overcoming their addiction and caring for their children through placement with relatives.

NMSA 1978, Section 40–7–4 (Repl.Pamp. 1983), of the Adoption Act provides in applicable part:

A. The rights of a parent * * * with reference to a child may be terminated by the court as provided in this section. *In proceedings to terminate parental*

*rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child.*

B. The court shall terminate parental rights with respect to a minor child when:

\*  \*  \*  \*  \*  \*

(3) the child is a neglected or abused child as defined in Section 32–1–3 NMSA 1978, and the court finds *that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parents in adjusting the conditions which render the parent unable to properly care for the child* [.] [Emphasis added.]

Under the Children's Code, a "neglected child" is defined as a child who is "without proper parental care and control or subsistence, education, medical or other care or control necessary for his well-being because of the faults or habits of his parent ... or his neglect or refusal, when able to do so, to provide them[.]" NMSA 1978, § 32–1–3(L) (Repl.Pamp.1981). In proceedings to terminate parental rights, Section 40–7–4(A) requires that the court give primary consideration to the physical, mental and emotional welfare and needs of the child. *See also In re Termination of Parental Rights of C.P. and E.P.*, 103 N.M. 617, 711 P.2d 894 (Ct.App.1985).

Section 40–7–4(B)(3) requires the Department to make reasonable efforts to assist the parents in adjusting the conditions that render them unable to properly care for the children, prior to permitting any termination of parental rights. *Id.; In re Doe*, 97 N.M. 69, 636 P.2d 888 (Ct.App.1981). The term "reasonable efforts" and the legislative policy expressed in Section 40–7–4(A) should be read together.

On appeal, we view the evidence in a light most favorable to support the findings and conclusions of law adopted by the trial court below. *See In re Doe.* The standard of review is whether the grounds

relied upon by the district court have been proven by clear and convincing evidence. Section 40–7–4(K). *See also State ex rel. Department of Human Services, Social Services Division v. Ousley,* 102 N.M. 656, 699 P.2d 129 (Ct.App.1985). The trial court's decision resulting in the termination of parental rights will be affirmed if its findings are supported by clear and convincing evidence and grounded on the proper rule of law. *State ex rel. Department of Human Services v. Minjares,* 98 N.M. 198, 647 P.2d 400 (1982). Where the findings of the court below are predicated upon clear and convincing evidence, all evidentiary conflicts will be resolved in favor of the prevailing party. *Id.* Clear and convincing evidence consists of "proof stronger than a mere 'preponderance' and yet something less than 'beyond a reasonable doubt.' " *In re Adoption of Doe,* 98 N.M. 340, 345, 648 P.2d 798, 803 (Ct.App.1982). To be clear and convincing, evidence "must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and [leave] the [fact finder] * * * with an abiding conviction that the evidence is true." *In re Sedillo,* 84 N.M. 10, 12, 498 P.2d 1353, 1355 (1972). Here, the trial court's findings as to respondents' neglect are supported by clear and convincing evidence.

The evidence supports the findings of the trial court that: (1) the children of respondents were neglected; (2) the Department and other state agencies undertook reasonable efforts to assist the parents in resolving the problems which rendered the parents unable to properly care for their children; and (3) the conditions and causes of neglect were unlikely to change in the foreseeable future.

As shown by the evidence, the Department initiated behavior modification therapy and several drug rehabilitation programs on behalf of respondents. It provided group and individual counseling to respondents prior to their incarceration in 1977. Additionally, parole authorities imposed conditions of parole, including the requirement that respondents participate in a drug rehabilitation program. After respondents were paroled in 1983, they enrolled in a drug therapy program but failed to fully participate. Thereafter, the paroles of respondents were again revoked.

Prior to the decision of the Department to initiate proceedings seeking termination of respondents' parental rights, the Department attempted to ascertain what further professional assistance could be provided to the family. The evaluations were performed by Dr. Edward Snyder, clinical psychologist and counselor for the family. He recommended a counseling program be established for respondents. Respondents did not comply with the counseling program and were again incarcerated in June 1984.

Under these facts, the court's finding was supported by substantial evidence, under a standard of clear and convincing evidence. This evidence reflected that the Department was involved in assisting respondents from 1975 to 1980, and that both the Department and parole authorities made reasonable efforts to provide counseling and drug therapy, beginning in 1983 and continuing through June 1984. Not only did respondents fail to meaningfully cooperate or participate in such programs, but their own actions resulted in further incarceration. The finding of the court was buttressed by clear and convincing evidence. *See In re Termination of Parental Rights of C.P. and E.P.; State ex rel. Department of Human Services, Social Services Division v. Ousley.*

## II. ADMISSIBILITY OF EVIDENCE

Respondents objected at trial to evidence presented by Dr. Snyder, who testified that all three children had improved after being placed in foster care. Respondents premised their objection on the ground that the question of which home the children lived in was preferable, theirs or foster homes, was not relevant in a

proceeding to terminate parental rights. The trial court overruled the objection.

Respondents contend that evidence presented by the individuals seeking to adopt the children served to convince the trial court that the children would live in better homes if the adoptions were authorized. Respondents also claim that without such evidence, the state presented insufficient evidence to prove that their parental rights should be terminated. The Department answers this argument by noting that although respondents objected on this ground during the testimony of Dr. Snyder, respondents, however, failed to object to similar evidence during the testimony of the prospective adoptive parents.

▮ In actions seeking to terminate parental rights, the court may not balance the backgrounds of the parties to determine which party may provide a preferable environment for the child. *State ex rel. Department of Human Services v. Minjares; see State ex rel. Department of Human Services v. Natural Mother,* 96 N.M. 677, 634 P.2d 699 (Ct.App.1981). While it is clear that a trial court may not rest its decision on the financial status, size of a party's residence, or the education and backgrounds of competing parties, evidence relating to the alleviation of factors which have materially and adversely affected the physical, mental and emotional welfare and needs of a child is relevant. Section 40–7–4(A). The fact that testimony may not have been admissible for one purpose does not render it inadmissible for another purpose. *State v. Wyman,* 96 N.M. 558, 632 P.2d 1196 (Ct.App.1981); *State v. Padilla,* 90 N.M. 481, 565 P.2d 352 (Ct.App.), *cert. denied,* 91 N.M. 3, 569 P.2d 413 (1977). Moreover, it is presumed that the trial court disregarded inadmissible testimony; erroneous admission of testimony does not constitute reversible error, unless it is apparent that the court considered such evidence in deciding the case. *Davis v. Davis,* 83 N.M. 787, 498 P.2d 674 (1972). The trial court did not adopt a finding as to

this issue. *Davis* held that the burden of showing prejudicial error rests on an appellant. Here, respondents have failed to show any prejudicial error in this regard.

The trial court's decision overruling respondents' objection to the testimony of Dr. Snyder was not error.

## III. SUFFICIENCY OF EVIDENCE

Respondents' final issue challenges the sufficiency of evidence to support the trial court's findings that even if the parents were able to rehabilitate themselves from their addiction to heroin, it would take at least two years to accomplish this goal and that "two years is too long to wait for the parents to adjust the conditions and causes of the neglect and abuse of their children." The trial court also found that it was not in the best interests of the children to wait a minimum of two years to determine if the parents would make the necessary changes.

Concerning the past behavior patterns of respondents and the unsuccessful rehabilitation attempts, the trial court made the following findings:

15. The New Mexico Department of Human Services and other individuals, agencies and institutions made many attempts to help the parents [end] their drug abuse, curb their criminal behavior and stabilize their lives, but the efforts have been unsuccessful because of the faults of the parents.

16. Although the parents have, in the past, expressed their intentions to adjust the conditions which make them neglectful and abusive parents, they failed to make the necessary changes.

17. The parents now express their intentions to adjust the conditions which make them neglectful and abusive parents, but it is unlikely that they will make the necessary changes.

Respondents argue that the evidence fails to support the trial court's findings that the parents' present drug addiction

would extend to the "foreseeable future." We disagree.

■ The term "foreseeable future" in Section 40–7–4(B)(3) and the statutory requirements of Section 40–7–4(A) should be read in *pari materia*. Subsection (A) provides that in proceedings to terminate parental rights, the court must give primary consideration to the physical, mental and emotional needs of the child. Section 40–7–4(B)(3) states that the court shall terminate parental rights if it finds that the "causes of neglect and abuse are unlikely to change in the foreseeable future." The phrase "foreseeable future," although not a precise time limit, does provide a commonly understood standard. *E.g., In re Sylvia M.*, 82 A.D.2d 217, 443 N.Y.S.2d 214, *modified*, 83 A.D.2d 925, 443 N.Y.S.2d 214 (1981). In this case, the record contains clear and convincing evidence that the causes of neglect were not likely to change within a reasonably definite time or within the near future.

Dr. Snyder testified that the children displayed pre-delinquent behavior while in the care of respondents, but improved after being placed in foster care. He testified that respondents had failed to adequately provide the necessary physical, mental and emotional needs of the children and that past attempts to help the parents to overcome drug dependency and act as responsible parents had failed.

Dr. Snyder testified that even under optimum circumstances, respondents would be unable to meaningfully act as parents for at least two years because of their heroin dependency. Dr. Snyder also asserted that in view of their past history, respondents' prognosis for overcoming drug addiction was poor.

In Dr. Snyder's opinion, a two-year wait by the children, coupled with the uncertain possibility that the parents would improve and properly assume their duties as responsible parents, was contrary to the best interests of each of the children. Dr. Snyder also testified that predicting the situation of respondents was difficult, but that the best indicator of future behavior was past behavior.

Drs. Feeney and Matthews, psychologists who evaluated respondents, testified that it would be at least two years before respondents' rehabilitation might have progressed sufficiently to permit returning the children to their parents. While Drs. Feeney and Matthews noted that respondents had new motivation to change, both psychologists acknowledged that respondents had a history of repeated failures and that a two-year wait might leave the children with further feelings of instability.

The record, considered *in toto*, supports the trial court's decision to terminate the parental rights of respondents by clear and convincing evidence. *See State ex rel. Department of Human Services v. Minjares; In re Termination of Parental Rights of C.P. and E.P.; State ex rel. Department of Human Services, Social Services Division v. Ousley.* Under Section 40–7–4(B)(3), the Department is charged with a clear mandate to assist parents of dependent or neglected children in resolving conditions which render them unable to properly care for their children. This statutory requirement must be read in context with the additional requirement that the court must give primary consideration to the physical, mental, emotional welfare, and needs of the children in proceedings to terminate parental rights.

■ Termination of parental rights is not a matter to be lightly taken. *Huey v. Lente*, 85 N.M. 597, 514 P.2d 1093 (1973) (adopting the special concurrence of Judge Hernandez in *Huey v. Lente*, 85 N.M. 585, 514 P.2d 1081 (Ct.App.1973)). The relationship between parents and their children is recognized to be of fundamental importance. *Id.* However, in balancing the interests of the parents and children, the court is not required to place the children indefinitely in a legal holding pattern. To do so would force the children to wait for the uncertain possibility that the natural parents, despite their persistent and long-standing disregard of the children's inter-

est, may remedy past faults which have rendered the children neglected. *See State ex rel. Department of Human Services v. Minjares;* § 32–1–3(L).

Respondents' court-appointed attorney seeks an award of attorney's fees incident to this appeal. The trial court's order appointing counsel to represent respondents on appeal provided for payment of attorney's fees on appeal, from district court funds. Following the issuance of the mandate herein, the trial court is directed to set respondents' attorney's fee for his services on appeal. *See In Re Termination of Parental Rights of C.P. and E.P.*

The order of the trial court terminating parental rights is affirmed.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.