## STATE EX REL. CYFD V. JESSICA B.

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT,**
**Petitioner-Appellee,**
**v.**
**JESSICA B.,**
**Respondent-Appellant,**
**and**
**ROY B.,**
**Respondent,**
**IN THE MATTER OF JAHYLA B., XZAHYVION B., IZAHYA M., and IZREAL C.,**
**Children.**

Docket No. A-1-CA-37573
COURT OF APPEALS OF NEW MEXICO
April 17, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Marie C. Ward, District Judge

### COUNSEL

Children, Youth & Families Department, Rebecca J. Liggett, Chief Children's Court Attorney, Santa Fe, NM, Kelly P. O'Neill, Children's Court Attorney, Albuquerque, NM for Appellee

Law Offices of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM for Appellant

Fooks Law, LLC, Lindsey R. Fooks, Corrales, NM, Guardian Ad Litem.

### JUDGES

M. MONICA ZAMORA, Chief Judge. WE CONCUR: KRISTINA BOGARDUS, Judge, BRIANA H. ZAMORA, Judge

**AUTHOR:** M. MONICA ZAMORA

### DECISION

**M. Zamora, Chief Judge.**

**{1}** Jessica B. (Mother) appeals the district court's judgment terminating her parental rights in her four children (Children). Mother contends that the district court's judgment was not supported by clear and convincing evidence. Mother also argues she was denied the right to present a defense when the district court did not allow her to testify about the family's participation in various therapies and programs prior to their involvement with the Children, Youth and Families Department (the Department.) We affirm the district court's judgment.

**{2}** Because this is an expedited bench decision and the parties are familiar with the facts and procedural background, we reserve discussion of the pertinent facts within the context of Mother's appellate arguments. We address Mother's arguments in turn.

## DISCUSSION

### Clear and Convincing Evidence Supports the Judgment Terminating Mother's Parental Rights in the Children

**{3}** Mother argues that the Department failed to show that it provided reasonable efforts to address the causes and conditions of Mother's neglect. She contends that the Department failed in two areas: (1) to adequately inform Mother of the specific conditions that needed to be changed in order to avoid a termination of her parental rights; and (2) to pursue reasonable efforts to address Mother's mental health.

**{4}** The Department filed a motion for termination of parental rights pursuant to NMSA 1978, Section 32A-4-28(B) (2005). Section 32A-4-28(B)(2) states in pertinent part:

> The court shall terminate parental rights . . . when the child has been a neglected or abused child as defined in the Abuse and Neglect Act and the [district] court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the [D]epartment . . . to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

**{5}** The Department bears the burden "to prove [these] . . . grounds for termination by clear and convincing evidence." *State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158. "[C]lear and convincing evidence" is defined as evidence that "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 2, 120 N.M. 463, 902 P.2d 1066 (internal quotation marks and citation omitted). Despite this stringent standard, on appeal, "this Court will not reweigh the evidence." *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. "The function of the appellate

court is to view the evidence in the light most favorable to the prevailing party, and to determine therefrom if the mind of the fact[-]finder could properly have reached an abiding conviction as to the truth of the fact or facts found." *State ex rel. Children, Youth & Families Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 12, 130 N.M. 781, 32 P.3d 790 (internal quotation marks and citation omitted); Thus, the question before us is "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859. This Court does not "assess the credibility of the witnesses, deferring instead to the conclusions of the [district court]." *Vanessa C.*, 2000-NMCA-025, ¶ 24.

{6}    Mother challenges the district court's findings addressing the necessary services the Department provided to her; Mother's inability to recognize and empathize the Children's needs and progress; Mother's difficulty in regulating her emotions; her failure to engage in her individual therapeutic services; her failure to engage in the Children's treatment team and treatment provider meetings her inability to understand or take responsibility for her actions and behaviors that brought the Children into the Department's custody and the impact on her ability to work with the Children's providers; and ultimately, her failure to make sufficient progress in her treatment plan such that the Children could be returned home. The remaining findings are unchallenged and thus are "binding on appeal." *Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298.

**The Children Were Neglected**

{7}    The Department filed a petition alleging that Mother had abused and neglected the Children. Mother voluntarily entered into a no contest plea and judgment finding that Mother neglected Children pursuant to NMSA 1978, 32A-4-2 (E)(2) (2009, amended 2016) (current version at Section 32A-4-2(G)(2) (2018)). The factual basis of Mother's plea was that "[C]hildren were without proper parental care and control, subsistence, education or other care and control necessary for the children's well-being due to Mother's failure or refusal to provide for such parental care, supervision, and needs of the children." The parties do not dispute that the Children were neglected as defined by the statute.

**The Department Made Reasonable Efforts to Assist Mother in Alleviating the Causes and Conditions that Brought the Children Into the Department's Custody**

{8}    The Department has an obligation to provide services targeted to addressing the causes of Mother's neglect of the Children. *See State ex rel. CYFD v. Joseph M.*, 2006-NMCA-029, ¶ 22, 139 N.M. 137, 130 P.3d 198 (noting that "a plan must 'correct, eliminate, or ameliorate' the condition on which the adjudication is based" ); *see also* NMSA 1978, § 32A-4-21(A)(10) (requiring the Department to provide a "predisposition study and report" to the district court which includes "a case plan that sets forth . . . services to be provided to the child and the child's parents to facilitate permanent

placement of the child in the parent's home"). The reasonableness of the Department's efforts depends on the "totality of the circumstances," which may include "the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *State ex rel. Children, Youth & Families Dep't. v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 814 (internal quotation marks and citation omitted). "A parent may . . . impeach the reasonableness of efforts to enable him or her to correct the underlying causes and conditions on the basis that those efforts were directed at the wrong causes and conditions." *State v. Penny J.*, 1994-NMCA-143, ¶ 20, 119 N.M. 328, 890 P.2d 389.

**{9}** Mother was ordered by the district court to comply with a treatment plan which required her to participate in a substance abuse assessment; address home, health and safety conditions; obtain suitable housing; provide the permanency planning worker (PPW) with a financial plan for caring for Children; inform PPW of any changes in address or phone number; be responsible for regularly obtaining provider reports to submit to the Department; sign releases of information for criminal, medical and mental health records; participate in a psychosocial assessment and follow recommendations; participate in a psychological assessment and follow recommendations; participate in parent orientation program; and provide PPW with names and contact information for relatives and fictive kin. Additionally, at the discretion of the Department, Mother was required to participate in meetings pertaining to the juvenile justice case for the oldest child, participate in family visits with her children, participate in non-emergency medical appointments with her children and participate in school meetings.

**{10}** In this case, substantial evidence supports the district court's finding that the Department's efforts to assist Mother were reasonable. To facilitate Mother's compliance with the treatment plan, the Department referred Mother to Dr. Christopher Alexander who diagnosed her with Bipolar II disorder which includes escalated rates of impulsivity, poor judgment, and accompanying depression, history of post-traumatic stress disorder, adjustment disorder, borderline personality disorder, and antisocial features. Dr. Alexander recommended that Mother participate in a psychiatric medical evaluation, which she never completed. He also testified that Mother's diagnosis can lead to verbal and physical violence and could play out in the parent-child relationship. The Department also referred Mother to Dr. Michael Rodriguez for another psychological evaluation, because she was convinced her assigned PPW had interfered with the previous diagnosis.

**{11}** In an effort to help Mother comply with her treatment plan, her first assigned PPW tried working with Mother to get her to engage with the mental health provider for the two older children; tried working with Mother to get her to engage with the younger two children's therapist; tried to meet with Mother about once a month, continued communication by telephone and email and worked with Mother's schedule. Mother's second assigned PPW met with her to discuss Mother's services and Mother's perspective on how the case had been going. A mediation was held to address the appropriateness of Mother's services, and the need for a parenting coach during her visits with the two younger children. Because Mother violated her conditions of house

arrest while participating in the community custody program, she was remanded into the custody of the Metropolitan Detention Center. Even after Mother was incarcerated for eight months, the Department continued to make efforts to assist Mother with appropriate services, although its efforts were hampered because Mother was in solitary confinement for part of her incarceration. Mother failed to recognize and take responsibility for violating the conditions of the program and she failed to understand that her actions and behaviors prevented her from participating in services.

**{12}** Mother's interactions with her second PPW were difficult because Mother was angry and emotional. Mother was never able to regulate her emotions during her meetings with this PPW.

**{13}** Her third assigned PPW tried to meet monthly with Mother. Mother was confrontational with her third assigned PPW the entire time he was assigned to her case. The PPW met with Mother's therapist to try to understand why Mother had made only minimal progress, especially where the Children's safety was concerned. He also provided Mother with the dates and times of the Children's medical appointments.

**{14}** Mother's fourth PPW personally transported her to her various therapies; scheduled visits around Mother's work schedule while trying to accommodate the oldest child's school and activities schedule; arranged to meet Mother at locations other than the Department; accommodated Mother's schedule for visits; accommodated Mother's request that her visits with the two older children and two younger children be separate; and attempted to set up a psychiatric evaluation, as recommended by Dr. Alexander.

**{15}** Mother contends that she was purposely left out of informational and decision making meetings by service providers and the Department. Mother also argues that she was denied information that she believed she needed to address the Children's issues. However, Mother's contentions lack merit. Mother was fixated on an issue between the two older children that had been resolved. She refused to acknowledge that there were no sexual issues between the two older children and demanded that she be provided with more details. She continued to demand that treatment for sexual abuse be included in the oldest child's treatment plan. Her second PPW never experienced Mother make accommodations for the Children's schedules.

**{16}** The second part of Mother's failure to exercise reasonable efforts argument, pursuant to *State ex. rel. Children Youth & Families Dep't v. Alicia P.*, 1999-NMCA-098, 127 N.M. 664, 986 P.2d 460, is that the Department failed to exercise reasonable efforts to address Mother's mental health. *See id.* ¶ 9 (noting that after counsel first meets with their client and discusses the issues with them "it is for the client to decide whether to appeal and to determine the scope of the appeal"). Specifically, Mother argues that the Department failed to present clear and convincing evidence that it made reasonable efforts to assist her with effective treatment to address her unique mental health needs. Mother sets forth Dr. Alexander's and Dr. Coleman's testimony, objects to two of the district court's findings, characterizes one of the district court's findings as blaming Mother for her mental health condition, and then states "the 'unique factors' in her case,

as stated by this Court in *Penny J.*"; however, she never develops her argument and we are not inclined to guess at what her argument could have been. We remind Mother that, as the appellant, she carries the burden of demonstrating error below. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("The presumption upon review favors the correctness of the trial court's actions. [The a]ppellant must affirmatively demonstrate its assertion of error."). We decline to further examine Appellant's undeveloped argument. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has not duty to review an argument that is not adequately developed.").

**{17}** Based on the foregoing evidence and the undisputed findings of fact, we conclude that there is substantial evidence to support the district court's conclusion that the Department's efforts to assist Mother in addressing the causes and conditions that brought the Children into the Department's custody were reasonable. *See Patricia H.*, 2002-NMCA-061, ¶ 27 ("[The Department] is only required to make reasonable efforts, not efforts subject to conditions unilaterally imposed by the parent.").

**The Causes and Conditions of Neglect are Unlikely to Change in the Foreseeable Future**

**{18}** Mother argues that evidence of her past behavior and because "people like Mother" do not easily change is not substantial evidence of her inability to alleviate the causes and conditions of neglect in the foreseeable future. Relying on her "positive" visits with the Children, Mother contends that her inability to "heal" mentally is not enough to terminate her parental rights. It is unclear to what past behavior Mother is referring. She sets forth the circumstances surrounding law enforcement's dispatch to the house, Mother's behavior, and law enforcement's interaction with her and one of the children, but does not provide the Court with any citations to the record. *See Chan v. Montoya,* 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). Nonetheless, there is substantial evidence to support the district court's conclusion that Mother failed to alleviate the causes and conditions that brought the Children into the Department's custody.

**{19}** Given Mother's inability to make progress, there was sufficient grounds to terminate Mother's parental rights. *See In re Termination of Parental Rights of Reuben & Elizabeth O.*, 1986-NMCA-031, ¶ 30, 104 N.M. 644, 725 P.2d 844 (interpreting the term "foreseeable future" to refer to corrective change within a "reasonably definite time or within the near future"). Our review of the record indicates that, while Mother was compliant with portions of her treatment plan at the time, she did not make sufficient progress toward changing the circumstances that brought the Children into the Department's custody. *See State ex rel. Children, Youth & Families Dep't v. Athena H.*, 2006-NMCA-113, ¶ 9, 140 N.M. 390, 142 P.3d 978 ("[C]ompliance with the terms of a treatment plan is not dispositive of the issue of parental termination. Even with a parent's reasonable efforts, . . . the parent may not be able to make the changes

necessary to rectify the cause and conditions of the neglect and abuse so as to enable the court to conclude that the parent is able to properly care for the child.").

**{20}** The evidence at trial showed that Mother disregarded the Children's issues that were discussed in treatment team meetings and she was not receptive to receiving information and this was concerning for the Children's treatment. The purpose of the treatment team meetings is for Mother to be able to listen and gather information about her child's progress and needs. This requires listening to and accepting information provided by the treatment team. She was dismissive of the clinical team's recommendations and became dysregulated when talking about the Children's behaviors by rolling her eyes, giggling and sighing at inappropriate times. Despite all the therapy, there was no change in Mother's emotional regulation, impulse control, or her anger management issues. She had a hard time regulating her emotions to the point that it made it difficult for her PPW to interact with her. Although accommodations were made to work with Mother's schedule, Mother never made accommodations to meet the Children's needs.

**{21}** Dr. Alexander opined that based on his initial 2003 diagnosis of Mother with cyclothymia (includes mania, impulsivity, and tendencies toward depression), a lower level of bipolar disorder with antisocial indicators and a high score on the negative treatment indicator to her current diagnosis of Bipolar II disorder, post-traumatic stress disorder, borderline personality disorder and antisocial features, it is unlikely that she will be able to address her mental health issues within a few months. As previously noted, Dr. Alexander recommended a psychiatric medication evaluation to see if medication would help Mother. Mother would not participate in this evaluation.

**{22}** Mother denies her mental health problems and Dr. Alexander testified that it is hard to treat a person who is in denial. Mother failed to make progress in addressing her own mental health needs. The Department recommended that Mother participate in individual therapy with another therapist, since she was not making progress. Mother did not stay engaged with the new therapists and did not make progress in addressing her own mental health needs. The Department tried to provide referrals for additional mental health services, but the Department was never able to verify any new providers. Mother denied her role in past incidents, and was not able to change her behaviors and actions in order to meet the needs of the Children. The Department worked with Mother and the challenges she presented for almost four years. In that time, she had four PPWs assigned to her, multiple therapists, therapies and family visits with the Children; however, she was not able to either engage or make progress to such a degree that she could safely meet her Children's needs.

**{23}** The evidence presented at trial was sufficient under the clear and convincing standard to establish that the causes and conditions of the neglect were unlikely to change in the foreseeable future despite the Department's reasonable efforts to assist Mother in adjusting the causes and condition that rendered her unable to properly care for the Children. *See Patricia H.*, 2002-NMCA-061, ¶¶ 23, 28. Based on the foregoing, we conclude that clear and convincing evidence supports the district court's finding that

despite the Department's reasonable efforts, the causes and conditions rendering Mother unable to properly care for Children were unlikely to change in the foreseeable future.

## II.     Mother Failed to Develop her Evidentiary and Due Process Claims

**{24}**     Pursuant to *Alicia P.*, 1999-NMCA-098 and *State ex. rel. Children, Youth & Families Dep't v. Melvin C.*, 2015-NMCA-067, 350 P.3d 1251, Mother argues that she was denied her right to present a defense when the district court did not allow her to testify about the family's participation in various therapies and programs prior to 2014, when the Department took custody of the Children. *See Alicia P.*, 1999-NMCA-098, ¶ 9 (recognizing appellate counsel's obligation to raise client's contentions on appeal); *see also Melvin C.*, 2015-NMCA-067, ¶ 12 (recognizing a parent's due process protections within the context of an adjudication).

**{25}**     Mother's due process argument is merely a general claim. Mother fails to set forth the nature of her defense and how the excluded evidence undermined that defense. We remind Mother that, as the appellant, she carries the burden of demonstrating error below. *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8 ("The presumption upon review favors the correctness of the trial court's actions. [The a]ppellant must affirmatively demonstrate its assertion of error.").

**{26}**     Additionally, Mother never establishes how the district court abused its discretion in excluding the evidence. *See State v. Samora*, 2016-NMSC-031, ¶ 37, 387 P.3d 230 (A court abuses its discretion when it makes an evidentiary ruling that "is clearly against the logic and effect of the facts and circumstances of the case" and "clearly untenable or not justified by reason.") (internal quotation marks and citation omitted)).

**{27}**     We decline to further examine Appellants' undeveloped arguments. *See Elane Photography v. Willock*, 2013-NMSC-040, 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)).

## CONCLUSION

**{28}**     Based on the foregoing, we affirm the district court's judgment terminating proceedings consistent with this decision.

**{29}   IT IS SO ORDRED.**

**M. MONICA ZAMORA, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**BRIANA H. ZAMORA, Judge**