This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37880**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

  Petitioner-Appellee,

v.

**SARA T.,**

  Respondent-Appellant,

and

**VICENTE T. SR.,**

  Respondent,

**IN THE MATTER OF VICENTE T. JR.,**

  Child.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Marci E. Beyer, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Jane B. Yohalem
Santa Fe, NM

for Appellant

ChavezLaw, LLC
Rosenda Chavez
Las Cruces, NM

Guardian Ad Litem

# DECISION

**BOGARDUS, Judge.**

**{1}**     Sara T. (Mother) appeals the termination of her parental rights to her son, Vincente T., Jr. (Child).[1] Mother advances three arguments: (1) there was insufficient evidence "to establish that Mother would not be able to remedy the causes and conditions of neglect in the foreseeable future[;]" (2) the district court erred in "valuing swift permanency . . . over family reunification[;]" and (3) Mother's telephonic appearance at the termination of parental rights (TPR) hearing was insufficient to protect her right to due process. Unpersuaded, we affirm.

**{2}**     Because this a non-precedential expedited bench decision and the parties are familiar with the facts and procedural posture of this case, our decision includes only those facts and law necessary to decide the merits. *See In re Court of Appeals Caseload*, Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016).

## BACKGROUND[2]

**{3}**     In March 2017, Child tested positive for cocaine, methamphetamines, and marijuana while in the care of Mother. As a result of Child's drug exposure, Mother was arrested and, as a condition of release, was not allowed to have contact with Child. Child was placed with his paternal aunt, Kalissa M., who had been appointed as a safety monitor. Approximately seven months later, on October 12, 2017, Kalissa M., informed Children, Youth and Families Department (CYFD) that she was no longer able to care for Child due to the limited resources provided. An alternate safety monitor and another paternal aunt of Child, Marissa T., informed CYFD she was only able to keep Child for the night. The following day, Child was placed into CYFD's custody.

**{4}**     On October 17, 2017, CYFD filed a petition alleging that Child was abused and neglected as defined in the Abuse and Neglect Act (the Act), NMSA 1978, §§ 32A-4-1 to -35 (1993, as amended through 2019). *See* § 32A-4-2(B)(1) (defining "abused child" as one "who has suffered or who is at risk of suffering serious harm because of the

---

[1]Father, Vincente T., Sr., also had his parental rights terminated in the same proceeding, but has not appealed that decision. Therefore, our opinion addresses only the facts and law relevant to Mother's appeal.

[2]The facts contained in this section are set forth to explain the context of the termination of Mother's parental rights. All facts relied on in our affirmance of the termination of Mother's parental rights are set forth in the subsection titled "Sufficiency of the Evidence" below. *See Children, Youth & Families Dep't v. Brandy S.*, 2007-NMCA-135, ¶¶ 31-32, 142 N.M. 705, 168 P.3d 1129 (indicating that, generally, a district court must rely on evidence introduced at the TPR hearing to make findings of fact relation to the termination of parental rights).

action or inaction of the child's parent"); § 32A-4-2(B)(4) (defining "abused child" as one "whose parent . . . has knowingly, intentionally, or negligently placed the child in a situation that may endanger the child's life or health"); and § 32A-4-2(G)(2) (defining "neglected child" as one "who is without proper parental care and control or subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent . . . or the failure or refusal of the parent, . . . when able to do so, to provide them"). The district court issued an ex parte custody order placing Child into CYFD's custody. Child was then placed in non-relative foster care because no relative was able or willing to care for him. Child's care was subsequently moved to another non-relative foster care placement.

**{5}** On February 5, 2018, pursuant to Mother's no contest plea, the district court entered a stipulated judgment and order that Child was neglected under Section 32A-4-2(G)(2). The district court found that Mother was unable to properly care and provide for Child due to her illegal drug use and conditions of release which prevented her from having contact with Child. Mother's court-ordered treatment plan required her to: (1) maintain open and regular contact with CYFD; (2) participate in and complete the Esperanza program or another similar program to obtain and maintain sobriety; (3) address her legal issues to be able to have contact with Child; (4) participate in a parenting program to attain age appropriate expectations of children and effectively demonstrate the utilization of those skills; (5) utilize resources to maintain safe housing; and (6) participate in a psychological evaluation and follow any recommendations that arise from the evaluation.

**{6}** On March 26, 2018, the district court entered an initial judicial review order after a hearing on the matter. While acknowledging that Mother complied with her treatment plan by contacting CYFD following her release from custody and by "respond[ing] to text messages most of the time[,]" the district court found that Mother failed to otherwise comply with her treatment plan. Specifically, the district court found that Mother had: not maintained open contact with CYFD; not answered phone calls from her case worker; missed five meetings with her case worker; refused to meet with her case worker while at the Doña Ana Detention Center; made two appointments with the infant mental health clinician then failed to attend the appointments or return calls and messages from the provider trying to reschedule; not resolved her legal no contact order; neither attended nor completed her scheduled psychological evaluation; scheduled at least three home visits from which she was then absent; and not completed the required hair follicle drug test. Based on this, the district court found that Mother had not progressed in her case plan and entered a finding of futility, which relieved CYFD from its obligation to make reasonable efforts to implement Mother's case plan.

**{7}** Four days after the initial judicial review, Child's placement was changed for a third time at CYFD's request due to an emergency. Four days after that placement, Child's care provider requested that the placement be changed and Child was placed with a fourth care provider. Child remained with his fourth placement through the TPR hearing.

**{8}**     On May 22, 2018, CYFD moved to terminate Mother's parental rights to Child. In the motion, CYFD alleged that Mother was unable or unwilling to provide proper parental care or control for Child and had not utilized or benefited from the services offered by CYFD to remedy the conditions and causes of Child's neglect. CYFD further alleged that it was unlikely that the situation would change in the foreseeable future. The TPR hearing was scheduled for September 10, 2018.

**{9}**     On July 31, 2018, Mother was sentenced to a term of incarceration of three years in relation to her criminal child abuse charge. On August 2, 2018, CYFD took Child to the Doña Ana Detention Center to visit with Mother. Mother was subsequently transferred to the Western New Mexico Correctional Facility for classification in mid-August 2018. Mother was then transferred to the Springer Correctional Facility on or about August 30, 2018.

**{10}**     At Mother's request, the first scheduled hearing on CYFD's TPR motion was continued after the Doña Ana County Sheriff's Department was unable to transport Mother to the hearing as a result of her transfer within the New Mexico Department of Corrections. On November 2, 2018, three days before the rescheduled TPR hearing, Mother again moved to continue the hearing because her transport order had been rejected by the Doña Ana County Sheriff's Department without notice to her counsel or the district court. After the parties presented argument on Mother's motion to continue, the district denied the motion. The TPR hearing was held on November 5, 2018.

**{11}**     Mother appeared telephonically at the TPR hearing, conferred with her counsel after the close of CYFD's evidence, and testified on her own behalf. Following the hearing, the district court granted CYFD's motion, issued findings of fact, and concluded that, despite CYFD's reasonable effort to assist Mother in addressing the conditions that rendered her unable to provide for Child, it was in Child's best interest to terminate Mother's parental rights. Mother appeals.

**DISCUSSION**

**I.     Sufficiency of the Evidence**

**A.     Standard of Review**

**{12}**     Section 32A-4-28(B)(2) provides that the district court shall terminate parental rights when

> the child has been a neglected or abused child as defined in the [Act] and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by [CYFD] to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

"It is [CYFD's] burden to prove the statutory grounds for termination by clear and convincing evidence." *State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158. "Clear and convincing evidence means evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Nathan H.*, 2016-NMCA-043, ¶ 31, 370 P.3d 782 (internal quotation marks and citation omitted). The district court must "give primary consideration to the physical, mental, and emotional welfare and needs" of children when considering terminating parental rights. Section 32A-4-28(A).

**{13}** "This Court will uphold the termination if, viewing the evidence in the light most favorable to the judgment, a fact[-]finder could properly determine that the clear and convincing standard was met." *Tammy S.*, 1999-NMCA-009, ¶ 13. Our standard of review does not require us to determine "whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859. "On appeal, this Court may not reweigh the evidence." *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 3, 120 N.M. 463, 902 P.2d 1066. "[O]ur job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law." *Patricia H.*, 2002-NMCA-061, ¶ 28.

**B.  Clear and Convincing Evidence Supported the District Court's Finding That the Causes and Conditions of Neglect Were Unlikely to Change in the Foreseeable Future**

**{14}** Mother argues that there was insufficient evidence "to establish that Mother would not be able to remedy the causes and conditions of neglect in the foreseeable future." Rather, Mother contends that CYFD relied on stale evidence when it granted CYFD's motion to terminate her parental rights to Child.[3] We disagree.

**{15}** "We have interpreted the term 'foreseeable future' to refer to corrective change within 'a reasonably definite time or within the near future.' " *Id.* ¶ 34 (quoting *In re Termination of Parental Rights of Rueben & Elizabeth O.*, 1986-NMCA-03, ¶ 30, 104 N.M. 644, 725 P.2d 844). This Court has also recognized that, "in balancing the interests of the parents and children, the court is not required to place the children indefinitely in a legal holding pattern." *Id.* (internal quotation marks and citation omitted).

---

3Mother contends that she is entitled to additional time to establish her ability to care for Child because "[o]vercoming an addiction to methamphetamine is especially difficult." Mother cites a healthcare guide from Colorado for the proposition that six-month inpatient programs are successful in treating methamphetamine addiction but does not cite authority indicating she is entitled to additional time to establish her ability to care for Child based upon the nature of her addiction or its unique rehabilitative needs. Therefore, we decline to review this contention. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that where a party cites no authority to support an argument, we may assume no such authority exists).

**{16}** To establish Mother's noncompliance with the treatment plan and failure to address the causes and conditions of Child's neglect at the TPR hearing, CYFD relied on testimony from Evelyn Anderson-Martin, a clinician with Amistad Family Services, and Claudia Cavazos, the CYFD permanency planning worker assigned to the case. We summarize their testimony as follows.

**{17}** Ms. Anderson-Martin stated that Mother was referred to her agency in October 2017 for infant mental health and child-parent psychotherapy services. Ms. Anderson-Martin further stated that Mother scheduled two intake appointments that Mother neither attended nor cancelled despite being advised that the appointments were part of her treatment plan. Ms. Anderson-Martin reported that she had undertaken therapy with Child and his foster parents since June 2018. From that therapy, Ms. Anderson-Martin stated Child's trauma comes from both the circumstances that brought him into CYFD's custody and from having had several different placements. Ms. Anderson-Martin testified that having several different placements affects Child's ability to trust and build relationships as well as his ability to attach to any caregiver.

**{18}** Despite Mother's treatment plan, Ms. Cavazos testified that Mother had not: maintained communication with CYFD; provided anything indicating she had done any sort of drug therapy; provided anything indicating that she had gone to parenting classes or completed the infant mental health program; or completed her psychological evaluation. Ms. Cavazos testified that, to her knowledge, Mother had not done anything on her treatment plan. Ms. Cavazos further testified that she did not believe that Mother would be able to complete any of the items on her treatment plan in a reasonable amount of time.

**{19}** Mother then testified on her own behalf and identified the steps she had taken since she was transferred to the Springer Correctional Facility on or about August 30, 2018. Mother testified that she had undergone regular drug testing and that all tests had come back clean. Mother also described her participation in an intensive outpatient program that was mostly directed to drug addiction. Mother also reported that she had taken classes that dealt with drug addiction and understanding one's child.

**{20}** At the time of the TPR hearing, Child had been in CYFD custody for nearly thirteen months. Mother indicated that she expected to be released from incarceration in approximately one year. Mother conceded that she would need additional time, approximately three months, after she was released to be in a position to parent Child. Based on that timeline, Mother asked that Child be kept in foster care for at least an additional fifteen months.

**{21}** Based on all of the evidence in front of it, which included Mother's abundant failures to adhere to the terms of her treatment plan during the time she was not in custody, the district court could have reasonably concluded that the causes and conditions of neglect were unlikely to change in the foreseeable future. Furthermore, based on that same evidence, the district court could have reasonably concluded that it would be detrimental to Child's welfare to continue to wait in hope that Mother could

maintain sobriety and provide for Child's well-being at some indefinite point in the future. To this latter point, Child would have had to wait *at least* an additional fifteen months in order to determine whether Mother would be in a position to parent Child at that time, more than doubling the thirteen months Child had already spent in CYFD custody and between four different placements. *See Eventyr J.*, 1995-NMCA-087, ¶ 34 ("There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current home, under the care of his parents or foster parents, especially when such uncertainty is prolonged." (internal quotation marks and citation omitted)). In reaching its conclusion, the district court was soundly within its adjudicatory authority to consider Mother's past conduct as it related to her ability to parent Child in the future. *See State ex rel. Children, Youth & Families Dep't v. William M.*, 2007-NMCA-055, ¶ 65, 141 N.M. 765, 161 P.3d 262. Therefore, we conclude that the district court's finding that Mother was unlikely to ameliorate the causes and conditions of Child's neglect in the foreseeable future was supported by clear and convincing evidence.

**C.      Clear and Convincing Evidence Supported the District Court's Finding That CYFD Made Reasonable Efforts to Place Child With a Relative**

{22}    Mother contends that the district court erred in "valuing swift permanency only eight months after the adjudication over family reunification." Mother additionally argues that "[r]estoring Child's placement with [g]randmother while Mother completes her rehabilitation or placing Child in a guardianship with his aunt for that period continues to be in Child's best interests as defined by our Legislature." Mother's argument is not supported by the factual record nor the applicable law.

{23}    We begin by noting that Child has multiple grandmothers and aunts identified in the record. Mother's argument does not specifically identify which of Child's grandmothers or aunts it relates to. However, based on the context and relevant facts, we believe Mother's argument to be addressing Child's maternal grandmother, Jacqueline T., and Child's paternal aunt, Kalissa M. To the extent that Mother is arguing for placement with another aunt or grandmother, her argument is undeveloped and we decline to address it. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

{24}    We also note that the district court held the initial permanency hearing on May 21, 2018, wherein it changed Child's permanency plan to adoption. At that hearing, neither Mother nor Child's guardian ad litem objected to the district court's finding that CYFD had made reasonable efforts to place Child with a family member. Nevertheless, we briefly set forth the relevant law and CYFD's efforts to place Child with family.

{25}    The Legislature has expressly required that courts consider family placement, family connections, and family identity when placing children. *See* § 32A-4-22(A) (listing relevant concerns in placement of child, including several aimed at the identification, location, and investigation of relatives for possible placement). For the reasons that follow, we conclude that Child's placement satisfied the legislative intent that courts

make reasonable efforts to place children with family. *See* § 32A-4-22(A)(6)-(8) (requiring district court to enter findings considering whether reasonable efforts have been made to evaluate family placement and consider family identity and connections); *State ex rel. Children, Youth & Families Dep't v. Laura J.*, 2013-NMCA-057, ¶ 50, 301 P.3d 860 ("Section 32A-4-25.1(D) indicates that [CYFD] has a duty to make reasonable efforts to identify, locate, and conduct home studies on willing and appropriate relatives who could potentially serve as placement for a child."); *see also* § 32A-4-25(I)(6) (permitting district court to overrule CYFD's placement decision only where "the court determines [CYFD] . . . abused its discretion in the placement or proposed placement of the child").

**{26}** Nothing in the record indicates that Child was ever placed with his maternal grandmother, Jacqueline T. (Grandmother). Rather, the record indicates that when initially contacted on October 16, 2017, Grandmother reported that she could not care for Child because she was already caring for Mother's eldest daughter, Child's half-sister, over whom Grandmother had been awarded guardianship. Grandmother again reported that she was not a placement possibility when she was contacted by CYFD on the following dates: November 20, 2017; January 18, 2018; and April 4, 2018. Therefore, we reject Mother's argument as it relates to Grandmother.

**{27}** Child's paternal aunt, Kalissa M., advised CYFD that she could no longer be a caregiver for Child after having Child placed with her for nearly seven months without any assistance from either of Child's parents. At some later date, Kalissa M. contacted a supervisor at the Mesilla Valley CASA and indicated that she was willing to take placement of Child with some assistance from CYFD. On May 21, 2018, the district court ordered CYFD to make another attempt to determine whether Kalissa M. was a willing and appropriate relative placement. Mother does not direct us to anything in the record to establish that CYFD failed to comply with the district court's order. Instead, the record reflects that the next permanency hearing report, filed with the district court on November 2, 2018, indicated that "at this time there are no relatives that are able and willing to care for [C]hild." Therefore, we also reject Mother's argument as it relates to Kalissa M.

**{28}** Additionally, we note that CYFD held a family-centered meeting on April 26, 2018. By that time, CYFD had recommended to the district court that Child's permanency plan be changed to adoption. Therefore, any relative placement would additionally have had to be willing to adopt Child. After the family-centered meeting, CYFD determined that Child did not have any relatives that were able and willing to be both a relative placement and adoptive placement.

**{29}** Based on the foregoing, we conclude the district court's finding that CYFD had made reasonable efforts to identify a familial placement for Child was supported by clear and convincing evidence.

## II.     Mother's Due Process Rights Were Not Violated

**{30}** We now turn to Mother's final argument—that her telephonic appearance at the TPR hearing was insufficient to protect her right to due process. Specifically, Mother contends her telephonic appearance rendered her unable to assist in her defense because Mother was unable to consult with her counsel before cross-examination of the State's witnesses. "Whether an individual was afforded due process is a question of law that we review de novo." *State ex rel. Children, Youth & Families Dep't v. Rosalia M.*, 2017-NMCA-085, ¶ 8, 406 P.3d 972 (alteration, internal quotation marks, and citation omitted).

**{31}** "To evaluate the due process owed to a parent in termination proceedings, we use the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 . . . (1976)." *Rosalia M.*, 2017-NMCA-085, ¶ 9. Three factors are weighed under that test: "the parent's interest; the risk to the parent of an erroneous deprivation through the procedures used in light of the probable value, if any, of additional or substitute procedural safeguards; and the government's interest." *Id.* A parent's fundamental interest in the parent-child relationship and the state's interest in protecting the welfare of children balance equally; therefore, the second *Mathews*' factor is dispositive. *State ex rel. Children, Youth and Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 20, 133 N.M. 827, 70 P.3d 1266. "Our conclusion does not depend on a showing that Mother would have been successful if she had been provided with the additional procedures she alleges should have been provided; rather, Mother need only show that there is a reasonable likelihood that the outcome *might* have been different." *State ex rel. Children, Youth & Families Dep't v. Browind C.*, 2007-NMCA-023, ¶ 31, 141 N.M. 166, 152 P.3d 153 (internal quotation marks and citation omitted).

**{32}** To support her argument, Mother cites *State ex rel. Children, Youth & Families Dep't v. Ruth Anne E.*, 1999-NMCA-035, 126 N.M. 670, 974 P.2d 164. However, nothing in *Ruth Anne E.* supports Mother's argument that she should have been allowed to "consult with counsel before cross-examination of [CYFD]'s witnesses." We explain.

**{33}** Mother's argument relies on language contained in a parenthetical citation. *See id.* ¶ 18 (citing *State ex rel. Juvenile Dep't v. Stevens*, 786 P.2d 1296, 1299 (1990) (in banc)). While the language of the parenthetical could arguably offer some support for Mother's position, a review of the cited case indicates that the case itself does not offer.

**{34}** In *Stevens*, the Oregon Court of Appeals noted that the following facts suggested the father was "able *effectively* to consult with counsel[:]" (1) the father "testified by telephone and was able to consult with his counsel in the same way[;]" (2) the father's "testimony followed that of the adverse witnesses and responded to it point by point[;]" and (3) the father's "counsel was able to cross-examine the adverse witnesses meaningfully." 786 P.3d at 1299 (footnote omitted). Nothing suggests that the father in *Stevens* was allowed to consult with his counsel before cross-examination or that such was a requirement of termination hearings in which a parent participates telephonically. Therefore, we reject this argument as unsupported by cited authority. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2. Additionally, Mother has not argued that the cross-examination undertaken by her counsel was in any way defective or incomplete

nor has she identified how her physical presence at the hearing would have affected cross-examination of CYFD's witnesses. Because we reject this argument and Mother does not advance any other due process arguments, we conclude that Mother's due process rights were not violated.

**CONCLUSION**

**{35}** We affirm the district court's termination of Mother's parental rights.

**{36} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**ZACHARY A. IVES, Judge**