119 N.M. 328

State of New Mexico, ex rel. Human Services Department, in the Matter of the Termination of the Parental Rights of Penny J., Respondent, with respect to Jess B. and Kenneth B., Children.

STATE of New Mexico,
Plaintiff–Appellee,

v.

PENNY J., Respondent–Appellant.

No. 14944.

Court of Appeals of New Mexico.

Nov. 2, 1994.

Tom Udall, Atty. Gen., Donna L. Dagnall, Gen. Counsel, Diane Garrity, Sp. Asst. Atty. Gen., Angela Adams, Chief Children's Court Atty., Peter Klages, Children's Court Atty., Santa Fe, for petitioner-appellee.

Johnnette Shane, Albuquerque, for respondent-appellant.

Jeffrey Kauffman, Albuquerque, Guardian Ad Litem, for Jess B. and Kenneth B.

Laurie A. Knight, Albuquerque, for amicus curiae Protection and Advocacy System.

*OPINION*

BLACK, Judge.

Appellant Penny J. is a parent who has been diagnosed as having borderline personality disorder and borderline intellectual function resulting from cognitive difficulties, neurological soft signs, and seizure activity. The New Mexico Children, Youth and Families Department ("the Department") worked with Appellant over a five-year period as a result of repeated reports that Appellant was abusing and neglecting her children. In 1992, the Department moved to terminate Appellant's parental rights. The district court, children's court division, determined that the Department had expended reasonable efforts to assist Appellant in properly caring for her children, but that there was no reason to believe Appellant would be able to parent the children in a safe manner in the foreseeable future. Based on these findings, the district court ordered termination of Appellant's parental rights. Appellant argues that the Department improperly evaluated her disabilities and afforded her inappropriate treatment in violation of federal and state law. We disagree, and affirm.

## I. *STANDARD OF REVIEW*

■ On appeal from termination of parental rights, we are to view the evidence in the light most favorable to support the findings of the trial court. *Reuben & Elizabeth O. v. Department of Human Servs.*, 104 N.M.

644, 647, 725 P.2d 844, 847 (Ct.App.), *cert. denied* (Apr. 24, 1986). The standard of review is whether the grounds relied upon by the district court in terminating parental rights have been proven by clear and convincing evidence. *Id.* at 647–48, 725 P.2d at 847–48.

## II. *FACTS*

The Department first became involved with Appellant and father, Robert B.,[1] and their children, Danny B. and Jess B., in 1986, due to the chronic neglect of their children.[2] At that time, the children were taken into custody by the Department. Before the children were returned home eighteen months later, the Department provided services to the parents to assist them in addressing the conditions leading to the abuse and neglect. These services included a support group, in-home homemaker services to assist them in learning parenting and basic housekeeping skills, individual counseling and a literacy program for Appellant, and a parent-child participation program.

In 1987, the Department received reports that Jess B. was being physically abused. Custody of Appellant's children was again returned to the Department. Appellant agreed to plead no contest to a substantiated charge of abuse and neglect with respect to her children. Her two children (Kenneth B. was in utero when this action occurred) were ordered to remain in the physical and legal custody of the Department.

In February 1988, the Department assessed Appellant's situation to determine which services she should receive before being permitted to have the children returned to her care. Charlene McIver, a Ph.D. psychologist, diagnosed Appellant as having a borderline personality disorder and indicated that Appellant was not capable of "parenting these children at this time." Accordingly, the Department developed a treatment plan that included day treatment services at the Recreation, Health, and Occupation Center's

---

**1.** This Court previously affirmed the decision of the children's court terminating the parental rights of Robert B.

**2.** Prior to arriving in New Mexico, the exhibits indicate that Robert B. and Appellant had been investigated for child neglect and abuse in California, Nevada, and Arizona.

literacy program and a preschool program for Appellant, and in-home nursing care for newborn Kenneth B. The purpose of these services was to allow the parent to utilize the two years of training previously provided to develop appropriate parenting skills. The treatment plan went into effect after the next mandatory judicial review in May 1988. On December 8, 1988, the judicial review established a new treatment plan extending Appellant's participation in the literacy program, providing individual therapy for Appellant, requiring participation by both parents in the "Hands On" parenting program, and continuing day care and other in-home services for Kenneth B.

Termination of visitation with Jess B. was incorporated into the July 1989 treatment plan based on Dr. Cardillo's findings regarding "Penny's poor stress coping abilities" and her denial of "personal responsibility or awareness of her participation in Jess's removal from the home environment." On November 5, 1989, Kenneth B. was placed in the custody of the Department due to substantiated reports of physical abuse and medical neglect by Appellant. An adjudicatory hearing occurred with respect to Kenneth B. on February 9, 1990, and Appellant and Robert B. entered another no contest plea concerning the allegations of neglect. Meanwhile, the Department's plan of action indicated that it intended to terminate Appellant's parental rights with respect to Daniel B., Jess B., and Susan B.

The January 1990 judicial review incorporated a report that Appellant had not been participating in individual therapy since September 1989, and that the Department was exploring alternative therapy. However, the treatment plan proposed and approved at that time required her to participate in individual therapy.

At the judicial reviews occurring between June 1990 and February 1991, it was reported that Appellant: (1) had voluntarily left New Mexico in February 1990, and had resided at the Rescue Mission in El Paso, Texas for approximately four months; (2) did not visit with Kenneth B. on fourteen of twenty-five scheduled visitations; and (3) continued to be "unwilling" to participate with the treatment plan's objectives and was not able to secure either employment or stable housing.

The May 1991 judicial review indicated that Appellant was evaluated by Dr. Geoffrey Sutton. Dr. Sutton diagnosed her as having a "borderline intellectual function" and a "borderline range of intelligence." By October 1991, the Department had engaged the services of Toni Fine, a master's level therapist, who focused on increasing Appellant's independent living and life management skills. Additionally, a social worker, George Oller, provided weekly one-on-one parenting training. However, the therapeutic preschool program was discontinued because Appellant had made "minimal progress" and did not show the therapist an "ability to parent at that time[.]"

The Department finally filed a termination action on May 29, 1992. Toni Fine testified that Appellant was not "on par" with others in the parent community because of "her judgment abilities, her possible processing abilities, [and] the way there is no anticipation of possible consequences [of actions.]" Because parenting involves judgment, Fine reasoned that Appellant would not be able to take the "[parenting] reins alone" and would not have the ability to parent "today." Appellant's expert, George Oller, echoed Fine's testimony on that issue. Oller acknowledged that he saw "growth" in Appellant's parenting skills, but could not make "some broad sweeping statement that ... within six months she would be able to parent [full-time]."

## III. FEDERAL LAW

### A. The Americans with Disabilities Act

Appellant argues that Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (Supp. II 1990), requires the Department to provide services "from which she could gain the same benefits as other respondents without identified disabilities." We disagree.

Although enacted in 1990, the ADA was phased in gradually, meaning that different provisions became effective at different dates. Counsel for Appellant and amicus

rely upon the nondiscrimination provision in 42 U.S.C. § 12132, which provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* This provision did not, however, take effect until January 1992. *See* Bonnie P. Tucker, *The Americans with Disabilities Act of 1990: An Overview*, 22 N.M.L.Rev. 13, 99 (1992). Furthermore, Appellant concedes that the Department, through Toni Fine and Gregory Oller, provided her with appropriate individual training and counseling in 1991. Thus, Appellant's premise that she was discriminated against in violation of this provision of the ADA must fail.[3]

### B. *The Rehabilitation Act*

■ Appellant also argues that Section 504 of the Rehabilitation Act of 1973 ("the Act"), 29 U.S.C. § 794 (1988 & Supp. IV 1992), preempts state law and required the Department to provide services to Appellant "that were as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." As the title of the Act indicates, however, it was not designed primarily to apply to parental termination issues. *In re Robert S.T.*, 86 A.D.2d 748, 447 N.Y.S.2d 776, 777 (1982) (provisions inapplicable to termination of parental rights). One division of the New York family court, in a case relied upon by Appellant, originally found that the Act applied and preempted the termination of handicapped persons' parental rights. *In re Roth*, 109 Misc.2d 699, 440 N.Y.S.2d 806, 808 (1980). That position was almost immediately rejected by other divisions of the same court. As one judge said in *In re Richard M.*, 110 Misc.2d 1031, 443 N.Y.S.2d 291, 294 (1981):

A review of the legislative intent and, indeed, of the statutory language itself, makes it clear that the scope of federal concern was access by handicapped persons to educational, social, and vocational services that would assure them of "vocational rehabilitation and independent living." 29 U.S.C. § 701. The emphasis of the law and regulations is on non-discrimination in employment and education. To restrict the analysis of federal statutes to the Rehabilitation Act is to ignore more relevant Congressional enactments such as the Adoption Assistance and Child Welfare Act of 1980, P.L. 96–272. That law, with its creation of a new subdivision E (Federal Payments for Foster Care & Adoption Assistance) of Title IV of the Social Security Act, is more closely analogous to SSL 384–b, in its concerns for balancing the rights of children in foster care and their natural parents' rights. This court does not consider either the state's Social Services Law or the federal Adoption Assistance Act in conflict with the Rehabilitation Act. The concerns, programs, and standards are distinct, the chief difference being the latter's emphasis on the handicapped individual's self-sufficiency in contrast to the needs of children in foster care for permanent homes, whether with their biological or adoptive parents. Respondent's constitutional [Supremacy Clause] challenge is therefore rejected in its entirety.

The New York appellate courts have also held that the Act is inapplicable and does not preempt state termination of parental rights when the parent is presently and for the foreseeable future unable, by reason of mental limitations, to create proper and adequate care for the child. *In re Christopher T.*, 101 A.D.2d 997, 476 N.Y.S.2d 691, 692 (1984), *aff'd sub nom. In re Joyce T.*, 65 N.Y.2d 39, 489 N.Y.S.2d 705, 478 N.E.2d 1306 (1985); *see also South Carolina Dep't of Social Servs. v. Humphreys*, 297 S.C. 118, 374

---

**3.** We do not decide, then, the meaning of this federal concept of discrimination and its applicability to programs afforded Appellant by the Department. This statute presents novel and thorny challenges to the Department which hopefully will be seen as a fertile opportunity for new and creative approaches, so that physically and mentally challenged persons may participate effectively and have a chance truly to benefit from state services like parenting assistance. It may well be, as Appellant argues, that the Department must do a great deal more in adjusting its programs to make them more meaningfully accessible to the handicapped.

S.E.2d 922, 925 (Ct.App.1988). Nor does the federal precedent interpreting this provision require the state to create special or individualized programs specifically for mentally handicapped individuals. *Johnson v. Thompson*, 971 F.2d 1487, 1494 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993).

### C. *Equal Protection*

■ Appellant next argues that since "the State failed to provide services to Penny which afforded her equal opportunity to achieve the same result as other respondents, it clearly violated the equal protection and due process clauses of the United States and New Mexico Constitutions." Appellant fails to direct us to where these arguments were advanced below. *See In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.) (this Court will not "search the record"), *cert. denied*, 113 N.M. 690, 831 P.2d 989 (1992). Where the record fails to indicate that an argument was presented below, unless it is jurisdictional in nature, the argument will not be considered on appeal. *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987). Moreover, such arguments have been rejected previously in New Mexico, *In re Jason Y.*, 106 N.M. 406, 408–09, 744 P.2d 181, 183–84 (Ct.App. 1987), and elsewhere. *See In re Jennilee T.*, 3 Cal.App.4th 212, 4 Cal.Rptr.2d 101, 106–07 (Ct.App.) (due process), *review denied*, No. S025539, 1992 Cal. LEXIS 2466 (Cal. May 14, 1992); *In re I.D.*, 205 Ill.App.3d 543, 151 Ill.Dec. 94, 99, 563 N.E.2d 1200, 1205 (1990) (due process and equal protection); *In re Joyce T.*, 65 N.Y.2d 39, 489 N.Y.S.2d 705, 712–13, 478 N.E.2d 1306, 1313–14 (1985) (due process and equal protection); *In re Montgomery*, 311 N.C. 101, 316 S.E.2d 246, 255 (1984) (due process and equal protection); *State Dep't of Human Servs. v. Smith*, 785 S.W.2d 336, 339 (Tenn.1990) (due process). Since we find no controlling federal law which mandates reversal, we next examine whether the district court decision was in compliance with New Mexico law.

### IV. *NEW MEXICO LAW*

■ The grounds for termination of parental rights in New Mexico are now codified in NMSA 1978, Section 32A–4–28 (Repl. Pamp.1993).[4] Section A of that statute sets forth the polestar in any such proceeding; the directive that "the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child." Section 32A–4–28(A). " 'Primary consideration' means consideration that stands first in rank, importance or value, fundamental in nature." *In re Adoption of Doe*, 99 N.M. 278, 281, 657 P.2d 134, 137 (Ct.App.1982), *cert. denied*, 99 N.M. 358, 658 P.2d 433 (1983). Section B of the statute sets forth the specific grounds for termination. The present termination proceeding was initiated under Section 32A–4–28(B)(2), which provides:

> The court shall terminate parental rights with respect to a child when:
>
> .     .     .     .     .
>
> (2) the child has been a neglected or abused child as defined in the Abuse and Neglect Act [this article] and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions which render the parent unable to properly care for the child; provided, the court may find in some cases that efforts by the department or another agency would be unnecessary, when there is a clear showing that the efforts would be futile[.]

The district court found that the children were repeatedly abused and neglected. Under NMSA 1978, Section 32A–4–2(C)(4) (Repl.Pamp.1993), a child is neglected "whose parent, guardian or custodian is unable to discharge his responsibilities to and for the

---

4. Although many of the actions that form the basis of this dispute occurred before the effective date of the new Children's Code, July 1, 1993, the parties refer to the new Children's Code in their briefs. Due to the fact that the parties are content to rely on the new Children's Code, and the fact that the relevant provisions have not changed significantly, we also cite to the new Children's Code.

child because of incarceration, hospitalization or other physical or mental disorder or incapacity[.]" This statute "gives notice that a child is neglected if the parents lack the mental capacity to provide the care or control necessary for the child's well-being." *State ex rel. Health & Social Servs. Dep't v. Natural Father*, 93 N.M. 222, 225, 598 P.2d 1182, 1185 (Ct.App.1979). Appellant's inability to learn to provide the care or control necessary for her children's well-being is clear and convincing evidence of neglect. *See* NMSA 1978, § 32A–4–29(J) (Repl.Pamp.1993) (establishing clear and convincing evidence standard).

The district court also found that "the Department and other agencies have made reasonable efforts over an extended period of time to assist the respondents [Penny J. and Robert B.] in changing the causes and conditions which led to the abuse and neglect of the children." It is clear that there must be some evidence of an effort by the Department to assist the parent in caring for the child or at least a showing that such effort would have been futile. Section 32A–4–28(B)(2); *see In re J.J.B.*, 117 N.M. 31, 37, 868 P.2d 1256, 1262 (Ct.App.1993), *cert. granted*, 117 N.M. 121, 869 P.2d 820 (1994).[5]

In *In re Wayne R.N.*, 107 N.M. 341, 757 P.2d 1333 (Ct.App.1988), this Court found "reasonable efforts" based on the following facts:

> The efforts made by the department to remedy the causes of the neglect showed the department's efforts included the assistance of two social workers and a trained homemaker. Respondents' caseworker provided considerable assistance in the form of financial assistance and assistance with transportation. She also counseled them to some extent. The trained homemaker made over thirty-five visits to the home, in an effort to teach respondents minimum standards of homemaking and sanitation. These efforts were made over a three-year period and were augmented by the efforts of other agencies, which provided counseling concerning substance

abuse. The trial court's finding that the department made reasonable efforts to assist respondents is also supported by substantial evidence. *See In re Termination of Parental Rights of Reuben & Elizabeth O.*, 104 N.M. 644, 725 P.2d 844 (Ct.App. 1986); *In re Adoption of Doe*; § 32–1–54(B)(3).

*In re Wayne R.N.*, 107 N.M. at 345, 757 P.2d at 1337.

We recognize that there are differences between the circumstances of the respondents in *In re Wayne R.N.* and those of Appellant. We also recognize that "[e]fforts generally need to be made by courts to eliminate judgments based on stereotyped values in all cases terminating parental rights.... Courts particularly need to be sensitive to this issue because a court's decision is based on evidence gathered by another." Rosemary Shaw Sackett, *Terminating Parental Rights of the Handicapped*, 25 Fam.L.Q. 253, 272 (1991). A parent may challenge evidence of neglect on the basis that it arises from stereotypes. A parent may also impeach the reasonableness of efforts to enable him or her to correct the underlying causes and conditions on the basis that those efforts were directed at the wrong causes and conditions or were insufficient because of unique factors. The fact-finder should evaluate the evidence in light of express challenges, as well as implicit weaknesses in the case presented by the State. Once the fact-finder has evaluated the evidence presented by the State, however, an "appellate court's primary task is to determine if the decision reached at trial is justifiable on the facts and the law." *In re R.W.*, 108 N.M. 332, 336, 772 P.2d 366, 370 (Ct.App.), *cert. denied*, 108 N.M. 273, 771 P.2d 981 (1989). In this regard it is highly relevant that in this case Appellant herself requested a finding that the Department's efforts were reasonable.

While the Department's effort in the present case did not achieve the desired result, it offered numerous and various treatment modalities recommended by trained professionals. Four independent professionals

---

**5.** The statute does not compel even "reasonable efforts" when it becomes clear that preserving the family is not compatible with protecting the child and that further efforts to assist the parent would be futile. *In re Kenny F.*, 109 N.M. 472, 476–77, 786 P.2d 699, 703–04 (Ct.App.1990).

evaluated Appellant, not only to monitor her progress, but also to recommend different therapies. There were fifteen judicial reviews of Appellant's therapy over a five-year period. At each court proceeding, Appellant's counsel indicated assent to the proposed treatment plan.

The Supreme Court of Pennsylvania recognized the limits of an agency duty in such a situation.

> As aptly stated by Judge Catania, "[T]he parent cannot sit back, especially in factual situations like the one presently before the Court involving the mental incapacity of the parent, and expect the agency to effect a 'cure' for the individual and then when such 'a cure' is not forthcoming, blame the agency for the failure." (Slip opinion at p. 15).

*In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 890 (1986), *on remand,* 366 Pa.Super. 94, 530 A.2d 908 (1987). We hold that there was sufficient evidence of reasonable efforts to support a finding by clear and convincing evidence. *In re Wayne R.N.*, 107 N.M. at 345, 757 P.2d at 1337. Precedent from other jurisdictions on analogous facts supports the holding as well. *See, e.g., K.N. v. State*, 856 P.2d 468 (Alaska 1993); *In re R.H.*, 250 Mont. 164, 819 P.2d 152 (1991); *In re H.S.*, 161 Vt. 83, 632 A.2d 1106 (1993); *see generally* Sackett, *supra,* at 265 (discussing cases in which parental rights have been terminated).

There is also evidence to support the district court's finding that the conditions and causes of the neglect and abuse were unlikely to change in the foreseeable future. For example, no one testified that Appellant would be able to parent effectively at any foreseeable date. Furthermore, there was substantial testimony that Appellant was unlikely ever to develop the ability to parent these three children effectively. More importantly, as the guardian ad litem states, two of these children have been subjected to what is now more than seven years of uncertainty, and the evidence is clear that their best interests would be served by adoption. "There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or

foster parents, especially when such uncertainty is prolonged." *Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502, 513–14, 102 S.Ct. 3231, 3238, 73 L.Ed.2d 928 (1982). The court is justified, then, in terminating parental rights where it is clear after several years of effort that the child will not thrive, and the causes of neglect and abuse are unlikely to change in the foreseeable future. *In re R.W.*, 108 N.M. at 337, 772 P.2d at 371; *see Egly v. Blackford County Dep't of Public Welfare*, 592 N.E.2d 1232, 1235 (Ind.1992); *In re D.A.B.*, 240 Neb. 653, 483 N.W.2d 550, 553 (1992).

## V. CONCLUSION

In conclusion, the district court's findings are supported by clear and convincing evidence when viewed through the lens of the best interests of the child. Nothing in the applicable federal or state law requires either more or earlier individual treatment than that provided to Appellant.

The decision of the district court, children's court division, is affirmed.

IT IS SO ORDERED.

MINZNER, C.J., and BOSSON, J., concur.