STATE EX REL. CYFD V. DUSTIN G.

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT,**
**Petitioner-Appellee,**
**v.**
**DUSTIN G.,**
**Respondent-Appellant**
**and**
**DONALD G.,**
**Respondent,**
**IN THE MATTER OF THOMAS G., KALEIGH G., and WYATT G.,**
**Children.**

Docket No. A-1-CA-37362
COURT OF APPEALS OF NEW MEXICO
April 23, 2019

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY, Lyndy D. Bennett, District Judge

**COUNSEL**

Children, Youth & Families Department, Rebecca J. Liggett, Chief Children's Court Attorney, Santa Fe, NM, Kelly P. O'Neill, Children's Court Attorney, Albuquerque, NM for Appellee

Law Offices of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM for Appellant

Richard J. Austin, P.C., Richard J. Austin, Farmington, NM, Guardian Ad Litem.

**JUDGES**

JULIE J. VARGAS, Judge. WE CONCUR: LINDA M. VANZI, Judge, JENNIFER L. ATTREP, Judge

**AUTHOR:** JULIE J. VARGAS

**DECISION**

**VARGAS, Judge.**

**{1}**     Dustin G. (Mother) appeals the district court's termination of her parental rights to her three children (Children), arguing the district court erred in finding the New Mexico Children, Youth, and Families Department (CYFD) made reasonable efforts to assist Mother in adjusting the causes and conditions of Children's neglect and that further efforts would be futile. We affirm.

**BACKGROUND**

**{2}**     On August 19, 2016, CYFD took custody of Children, ages thirteen, ten, and seven at the time, and filed an abuse and neglect petition, alleging Mother abused and neglected Children under NMSA 1978, Section 32A-4-2(B)(4) and (F)(2) of the Abuse and Neglect Act (ANA). *See* NMSA 1978, §§ 32A-4-1 to -35 (1993, amended through 2018).[1] On October 31, 2016, Mother pleaded no contest to neglecting Children pursuant to Section 32A-4-2(F)(2), the factual basis for which was "[s]ubstance abuse, mental health, and housing instability[.]" The district court ordered CYFD to implement a treatment plan, which established a goal of reunifying Children with Mother and required Mother to participate in a substance abuse evaluation, assessments for sobriety, a mental health evaluation, parenting training, and scheduled visitation with Children, as well as maintain weekly contact with CYFD and obtain employment and safe and stable housing.

**{3}**     On July 17, 2017, the district court held an initial permanency hearing, at which the permanency planning worker at the time advised the district court that Mother had not taken steps to obtain outpatient treatment and had not called in for her required random urinalysis tests. Noting that Mother had not attempted to address her substance abuse issues since the case was filed, the district court amended the plan to include the goal of reunification with a concurrent plan of adoption. The district court scheduled a review hearing, advising the parties that if Mother had not been to inpatient treatment by the date of the review hearing, the court would change the concurrent plan to a plan of adoption only.

**{4}**     On July 19, 2017, CYFD filed a motion to terminate Mother's parental rights (TPR motion). In support of its motion, CYFD explained that although it "has provided or made available services and support designed to correct [Mother's] inability or unwillingness [to provide proper parental care or control for Children]," Mother "ha[s] either not utilized these services and support, or ha[s] been unable or unwilling to benefit sufficiently from them, or both."

**{5}**     The district court held the sixty-day review hearing on September 11, 2017, and CYFD advised the district court that Mother still had not called in for her random urinalysis tests and had not enrolled in a treatment program. Observing that Mother was

---

[1] Children's father (Father) is not a party to this appeal, but has brought his own appeal of the district court's termination of his parental rights.

making a lot of excuses, the district court reminded Mother that if she did not address the treatment requirement of her plan within three months, the district court would be considering CYFD's request to terminate her parental rights.

**{6}** The district court held a hearing on CYFD's TPR motion on February 5, 2018. The district court heard testimony from several witnesses, including Mother, Father, Children's maternal grandmother (Grandmother), a CYFD permanency planning supervisor, and a CYFD permanency planning worker. Following testimony, the district court concluded CYFD had shown, by clear and convincing evidence, that Children were neglected, that the conditions and causes of the neglect were unlikely to change in the foreseeable future despite CYFD's reasonable efforts to assist Mother in adjusting the conditions which rendered her unable to properly care for Children, and that any further efforts by CYFD to assist Mother would be futile. Accordingly, the district court ordered the termination of Mother's parental rights to Children. Mother appeals the district court's judgment.

**{7}** As this is a non-precedential decision and the parties are familiar with the factual background, we reserve further discussion of the pertinent facts for our analysis.

## I.      DISCUSSION

## A.      Standard of Review

**{8}** Section 32A-4-28(B)(2) of the ANA provides that the district court shall terminate parental rights if:

> the child has been a neglected or abused child as defined in the [ANA] and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by [CYFD] to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

**{9}** It is CYFD's burden to demonstrate that these elements are met by clear and convincing evidence. *State ex rel. Children, Youth & Families Dep't v. Nathan H.*, 2016-NMCA-043, ¶ 31, 370 P.3d 782.

**{10}** When considering the termination of parental rights, the district court is obligated to "give primary consideration to the physical, mental and emotional welfare and needs" of children. Section 32A-4-28(A). "Clear and convincing evidence means evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *Nathan H.*, 2016-NMCA-043, ¶ 31 (internal quotation marks and citation omitted); *see also State ex rel. Children, Youth & Families Dep't v. David F.*, 1996-NMCA-018, ¶ 34, 121 N.M. 341, 911 P.2d 235 (defining clear and convincing evidence as "proof stronger than a mere preponderance and yet something less than beyond a reasonable doubt" (internal quotation marks and citation omitted)). We uphold the

district court's termination decision "if, viewing the evidence in the light most favorable to the judgment, a fact finder could properly determine that the clear and convincing standard was met." *State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted). We give deference to the district court's findings of fact, *State ex rel. Children, Youth & Families Dep't v. Brandy S.*, 2007-NMCA-135, ¶ 17, 142 N.M. 705, 168 P.3d 1129, and are mindful that "[w]e cannot reweigh the evidence. Conflicts in testimony are matters for the trial court to resolve." *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 28, 128 N.M. 701, 997 P.2d 833.

## B. Reasonable Efforts

**{11}** Mother's first argument is that there was insufficient evidence to support the district court's finding that CYFD made reasonable efforts to assist her. In addressing Mother's arguments, we initially note that CYFD has an obligation to provide services targeted at addressing the causes of Mother's neglect of Children. *State ex rel. Children, Youth & Families Dep't v. Joseph M.*, 2006-NMCA-029, ¶ 22, 139 N.M. 137, 130 P.3d 198 (recognizing that "a plan must correct, eliminate, or ameliorate the condition on which the adjudication is based" (internal quotation marks and citation omitted)). When reviewing the district court's finding that CYFD made reasonable efforts to assist the parent, we consider the totality of the circumstances. *See State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 814. "Efforts to assist a parent may include individual, group, and family counseling, substance abuse treatment, mental health services, transportation, child care, and other therapeutic services." *Id.* (internal quotation marks and citation omitted). "[W]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and recalcitrance of the problems that render the parent unable to provide adequate parenting." *Id.* (internal quotation marks and citation omitted). "[O]ur job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 28, 132 N.M. 299, 47 P.3d 859.

**{12}** Mother lists seven reasons CYFD's efforts to assist her were not reasonable: (1) CYFD "did not provide reasonable efforts to address Mother's issues related to mental health and addiction"; (2) CYFD did not provide reasonable efforts to assist Mother in obtaining federal disability benefits; (3) CYFD did not "provide reasonable efforts to assist Mother [in finding] appropriate housing"; (4) CYFD's efforts were directed at the wrong causes and conditions of Children's neglect. (5) CYFD did not "make clear to Mother that her own financial independence from Father was a necessary element of completing her treatment plan"; (6) the amount of time before CYFD moved to terminate Mother's parental rights is per se insufficient to demonstrate reasonable efforts; and (7) CYFD did not sufficiently explore the possibility of awarding permanent guardianship, rather than adoption, to grandparents. We are not persuaded by any of Mother's arguments.

**1.    CYFD's Assistance With Substance Abuse and Mental Health Treatment**

**{13}**    The district court concluded that, while Mother "had good intentions concerning . . . [C]hildren," she "consistently failed to follow through or complete necessary steps to reunite with . . . [C]hildren[.]" Most importantly, Mother failed to take necessary steps to address her substance abuse problems notwithstanding CYFD's efforts in assisting her. Gwendolin Begaye, a CYFD permanency planning worker assigned to Mother's case, testified that the most important issue for Mother to address was her substance abuse problem, so that she could build sobriety and have the knowledge to parent Children and keep them safe.

**{14}**    Mother, however, failed to cooperate in the drug testing required by her treatment plan. Begaye testified that Mother was required to call CYFD on a daily basis to confirm whether she had to take a urinalysis on that given day, but that Mother had neither called nor texted concerning the urinalyses tests since September 2016, shortly after Children were removed.

**{15}**    Mother also refused to participate in either an inpatient or an intensive outpatient program to address her substance abuse issues. Presbyterian Medical Services recommended Mother participate in inpatient treatment and "attend an intensive outpatient program while securing an inpatient treatment center." CYFD provided Mother with the names and contact information for at least two treatment programs. Permanency Planning Supervisor LeAnne Lee testified that she discussed the intensive outpatient program with Mother, but that Mother did not want to participate in the program. Begaye also helped Mother contact two treatment facilities: Turquoise Lodge and a second facility in Santa Fe. Turquoise Lodge initially denied Mother admission because she tested positive for drug use after stating she had not used drugs for nearly sixty days.  Turquoise Lodge later accepted Mother, but Mother did not go into treatment. While neither Lee nor Begaye referred Mother to an intensive outpatient program, Lee testified that a referral was unnecessary "because [Mother] was already involved with" Presbyterian Medical Services, the provider who made the treatment recommendations. In addition to CYFD's efforts to assist Mother in addressing her substance abuse issues, Lee testified that she arranged and transported Mother to Durango, Colorado on two occasions to undergo a mental health evaluation. Nothing in the record, however, indicates whether follow-up mental health treatment was recommended.

**{16}**    Construing the evidence in a light supporting the judgment, we conclude that substantial evidence of a clear and convincing nature supported the district court's finding that CYFD made reasonable efforts to assist Mother in addressing her substance abuse issues, but that Mother failed to take necessary actions to remedy those issue *See Nathan H.*, 2016-NMCA-043, ¶ 32 (requiring CYFD to show by clear and convincing evidence that CYFD made reasonable efforts to "assist the parent in adjusting the conditions that render[ed] the parent unable to properly care for the child" (internal quotation marks and citation omitted)).

## 2. CYFD's Assistance With Federal Disability Benefits

**{17}** Mother next contends CYFD did not provide reasonable efforts to assist her in obtaining public benefits. Mother asserts she was not competent to pursue her Social Security appeal and that CYFD "could have offered to assist her with paperwork, which might involve simply accessing appropriate medical records and submitting them, or might involve referring Mother to an attorney specializing in Social Security appeals."

**{18}** Mother concedes there is no New Mexico precedent on point. She contends, however, that CYFD's effort to this end would naturally flow from reasonable efforts to assist Mother in adjusting a condition that rendered her unable to properly care for Children, namely, her poverty. However, as the district court's factual basis for Mother's plea of no contest to the charge of neglect was Mother's substance abuse, mental health, and housing instability, and Mother consistently failed to take any steps to address her substance abuse issues notwithstanding CYFD's reasonable efforts, we are not persuaded that CYFD's failure to refer Mother to an attorney specializing in Social Security appeals or to assist her with paperwork rendered its efforts legally insufficient. *Patricia H.*, 2002-NMCA-061, ¶ 28 (noting that "our job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law").

## 3. CYFD's Assistance With Housing

**{19}** Mother also argues CYFD did not provide reasonable efforts to assist Mother in finding appropriate housing despite CYFD's belief that Mother's house was unsafe for Children. We recognize that although Begaye considered Mother's house to be unsafe for Children because there was no running water, electricity, or heating, Begaye admitted she did not assist Mother in obtaining new housing because she "already had that house." However, CYFD took steps to send Mother to PATH, the Family Crisis Center, and New Beginnings for housing assistance. PATH could have assisted Mother with obtaining housing, but they declined to provide housing to Mother because she had previously given them "insufficient information" and owed the program two hundred dollars. Meanwhile, the Family Crisis Center and New Beginnings were at capacity. As Lee explained, Mother was unable to establish housing, even with CYFD's assistance. We therefore conclude there was sufficient evidence, under a clear and convincing standard, to support the district court's finding that CYFD complied with the minimum required under the law to assist Mother in attempting to locate suitable housing. *See id.*

## 4. The Relation Between CYFD's Efforts and the Causes of Neglect

**{20}** Mother also claims that CYFD's efforts were not reasonable because they were directed at the wrong causes and conditions of Children's neglect and, specifically, that CYFD should have directed its efforts to ameliorating Mother's poverty. We acknowledge that a parent may "impeach the reasonableness of efforts to enable him or her to correct the underlying causes and conditions on the basis that those efforts were directed at the wrong causes and conditions or were insufficient because of unique

factors." *State ex rel. Human Servs. Dep't v. Penny J.*, 1994-NMCA-143, ¶ 20, 119 N.M. 328, 890 P.2d 389. However, when Mother pleaded no contest to a charge of neglect, the district court specified that the factual basis for Mother's plea was substance abuse, mental health, and housing instability. Furthermore, sufficient evidence was presented at trial to support the district court's conclusion that the cause of Children's neglect was not limited to poverty, as Mother asserts, but was rooted principally in drug abuse. Begaye testified that the most important issue for Mother to address was her substance abuse problem, linking Mother's sobriety with her ability to keep Children safe. We, therefore, cannot reasonably conclude that the causes of neglect were limited to, or even primarily attributable to, poverty. In light of CYFD's efforts to assist Mother with all three issues identified by the district court as the factual basis for Mother's neglect— substance abuse, mental health, and housing instability—we conclude that CYFD made reasonable efforts to address the causes of Mother's neglect of Children. *See Joseph M.*, 2006-NMCA-029, ¶ 22 (recognizing a plan must "correct, eliminate or ameliorate" the factual basis of parent's neglect).

### 5.  Including Financial Independence in Mother's Treatment Plan

**{21}**  Mother next argues CYFD was required to inform her that she needed to obtain employment and to make clear to Mother that her financial independence from Father was a necessary element of completing a treatment plan. First, we note that CYFD, in the treatment plan and in its February 9, 2017 compliance letter, expressly instructed Mother that she needed to "[o]btain and maintain employment." Notwithstanding this, Mother, relying on this Court's holding in *Joseph M.*, argues that CYFD should have been more clear that Mother could not rely on Father for financial support but needed to obtain financial independence. *Joseph M.* is inapplicable to the circumstances of this case. In *Joseph M.*, the mother was "consistently engag[ing] in inappropriate and problematic behaviors with her children" and was making "little progress toward becoming an adequate parent." *Id.* ¶ 10. Meanwhile, the father was participating in the parenting classes, accepting the social worker's suggestions, taking classes on anger management and substance abuse, and successfully dealing with his substance abuse issues. *Id.* ¶¶ 11-12. Although the father was making "positive progress" toward becoming an adequate parent, he did not want to abandon the mother. *Id.* ¶¶ 11, 19. At no point did CYFD inform the father that a failure to separate from the mother could result in a termination of his parental rights because his relationship with the mother "rendered him unable to properly care for his children." *Id.* ¶ 20. Moreover, CYFD did not include the option of raising the children without the mother as a goal in the father's treatment plans. *Id.* ¶ 19. We concluded that under those circumstances, "it was incumbent on [CYFD] to . . . specifically alert [the f]ather to the consequences of his staying with [the m]other." *Id.* ¶ 23.

**{22}**  Unlike the father in *Joseph M.*, here, Mother was not making positive progress toward becoming an adequate parent and the termination of her parental rights did not hinge on her failure to obtain financial independence from Father. Begaye testified that she referred Mother to group parenting classes, but that Mother attended only two classes. Begaye again referred Mother to the same program, but requested individual,

in-home classes. She testified that Mother did not participate in these in-home parenting classes either. Beyond parenting classes, Mother was able to use FaceTime to contact Children for up to one hour each week for a forty-two week span, but used it only twenty-three or twenty-four times. Additionally, Mother was permitted to call Children twice every week, but Grandmother testified that Mother called only once a month during the few months preceding the termination hearing, and less frequently before that. Grandmother also testified that Mother did not call two of Children for their birthdays in 2017. Most importantly, as set out above, Mother did not make positive progress toward addressing her substance abuse issues. As the termination or preservation of Mother's parental rights was not dependent only on Mother's employment or her financial independence, *Joseph M.* is inapplicable to the case at hand, and Mother's argument is without merit.

### 6.      The Amount of Time Before CYFD Moved to Terminate Mother's Parental Rights

**{23}**      Mother asserts the amount of time before CYFD moved to terminate her parental rights—less than eleven months after CYFD took custody of Children and less than ten months after Mother's plea of no contest to the charge of neglect—"is per se insufficient to demonstrate reasonable efforts." In support of her argument, Mother cites *Patricia H.* In *Patricia H.*, this Court noted that "states are not required to make reunification efforts for an indefinite period of time" and concluded that "[t]he fifteen-month period described in [the Adoption and Safe Families Act] for time-limited reunification services provides us some guidance in how we assess the duration of reasonable efforts under state law." 2002-NMCA-061, ¶ 26 (internal quotation marks omitted). However, we underscored "that the use of such guidance needs to remain flexible and must be harmonized with the requirements of state law." *Id.* In any event, we note that CYFD's efforts to assist Mother endured from the time the district court approved Mother's parenting plan on October 31, 2016, until January 2018, shortly before the termination hearing—a period of about fifteen months, satisfying the recommended guidelines to provide reunification services. *See id.*

**{24}**      Furthermore, our state law does not require CYFD to wait a minimum amount of time before filing a motion to terminate parental rights. *See* § 32A-4-29(A) ("A motion to terminate parental rights may be filed *at any stage* of the abuse or neglect proceeding by a party to the proceeding." (emphasis added)). Based on Mother's refusal to take any steps to address her substance abuse issues in the eleven months between the time CYFD took custody of Children and the time it filed its motion to terminate Mother's parental rights, we disagree that CYFD's motion to terminate her parental rights after eleven months "is per se insufficient to demonstrate reasonable efforts." "Both [CYFD] and [parents] are responsible for making efforts toward reunification of the family." *Keon H.*, 2018-NMSC-033, ¶ 48. Mother's lack of cooperation in obtaining treatment to address her substance abuse issues render CYFD's efforts reasonable under the circumstances of this case. *See id.* ¶ 41 (concluding reasonable efforts vary with a number of factors, including a parent's level of cooperation).

**7.     CYFD's Exploration of Permanent Guardianship as an Option**

**{25}**    Mother contends CYFD did not sufficiently explore the option of granting permanent guardianship to grandparents before moving for termination and adoption. Assuming without deciding that CYFD had an obligation to do so, we conclude that the evidence was sufficient to permit the district court to conclude that CYFD's efforts were reasonable in this regard. At the termination hearing, Lee testified that she talked to Mother, Father, and Grandmother about permanent guardianship as an option. Moreover, pursuant to Section 32A-4-25.1(B), the district court held a permanency hearing in July 2017, and heard from all of the stakeholders, including Mother, Father, and their counsel. Section 32A-4-25.1(B) provides:

> At the permanency hearing, all parties shall have the opportunity to present evidence and to cross-examine witnesses. *At the conclusion of the permanency hearing, the court shall order one of the following permanency plans for the child:*
>
> (1)     reunification;
>
> (2)     placement for adoption after the parents' rights have been relinquished or terminated or after a motion has been filed to terminate parental rights;
>
> (3)     placement with a person who will be the child's permanent guardian;
>
> (4)     placement in the legal custody of the department with the child placed in the home of a fit and willing relative; or
>
> (5)     placement in the legal custody of the department under a planned permanent living arrangement, provided that there is substantial evidence that none of the above plans is appropriate for the child.

(Emphasis added.)

**{26}**    At the close of the hearing, the district court concluded that the appropriate permanency plan should include a goal of reunification with a concurrent plan of adoption, rather than a permanent guardianship. Several months later, the district court warned Mother it would soon consider CYFD's request to terminate her parental rights. Despite Mother's knowledge of the permanency plan and notice of the TPR motion, neither she nor Grandparents took action to seek a permanent guardianship in the four months between that warning and the TPR hearing. *See* § 32A-4-27(A)(2), (4) (permitting intervention by a relative or a person who wishes to become the child's permanent guardian); § 32A-4-31 (governing guardianships); § 32A-4-32 (guardianship procedure). In light of the process provided to Mother, the processes available for interested persons to seek a guardianship, and the testimony that Lee discussed a

permanent guardianship with Mother and Grandmother, we conclude that the district court could have found by clear and convincing evidence that CYFD's efforts were reasonable as to this issue. *Cf. Keon H.*, 2018-NMSC-033, ¶ 48 (stating that both CYFD and parents "are responsible for making efforts toward reunification of the family").

## B.     Futility of Further Efforts

**{27}**    Mother's final argument is that the district court erred in finding that further efforts by CYFD to assist Mother would be futile. Apart from a single sentence challenging the district court's finding to that effect, Mother does not develop this argument. We therefore decline to review it. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("There is no explanation of [this] argument, nor are there any facts that would allow us to evaluate this claim. We will not review unclear arguments, or guess at what [a party's] arguments might be.").

## CONCLUSION

**{28}**    We affirm the district court's judgment terminating Mother's parental rights to Children.

**{29}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JENNIFER L. ATTREP, Judge**