This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37769**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**JUAN V.,**

Respondent-Appellant,

**IN THE MATTER OF BRIDGET V.,
and NORA V.,**

Children.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
Lee A. Kirksey, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Laura K. Castillo
Hobbs, NM

Guardian Ad Litem

**DECISION**

**VARGAS, Judge.**

**{1}** Juan V. (Father) appeals the termination of his parental rights as to his two children (Children), arguing the district court erred in finding the New Mexico Children, Youth and Families Department (CYFD) made reasonable efforts to assist Father in changing the causes and conditions that gave rise to the abuse and neglect of Children. We affirm.

**BACKGROUND**

**{2}** On March 24, 2017, CYFD took custody of two children—a two-year-old and one-month-old (Children). In its abuse and neglect petition, CYFD alleged Father abused and neglected Children under NMSA 1978, Section 32A-4-2(B)(4), (F)(2) (2016, amended 2018). Following an adjudicatory hearing, the district court found Children suffered physical, emotional, or psychological abuse "inflicted or caused by [Father], pursuant to Section 32A-4-2(B)(2)[,]" that Father "knowingly, intentionally, or negligently placed [C]hildren in a situation that may endanger [their] li[ves] or health," and that Father was "unable to discharge his parental responsibilities to and for [Children] because of incarceration, hospitalization, or other physical or mental disorder or incapacity, pursuant to Section 32A-4-2(F)(4)[.]" In particular, the district court found:

> [Father] yelled and cursed at [the oldest child,] causing her to scream and act out. [Father] left [C]hildren with [Mother,] knowing her history of overusing medications and [Mother] dropped [the oldest child] on her head. [Father] sleeps throughout the day due to his medications and his mental disorders do not allow him to appropriately care for [Children].

**{3}** The district court ordered CYFD to implement a treatment plan, which established a goal of reunifying Children with Father and included a concurrent plan of adoption. The treatment plan required Father to, in relevant part, participate in psychological evaluations; visit with Children two times per week; participate in Children's development services; follow his doctor's recommendations and maintain good physical health; maintain weekly contact with CYFD; participate in individual counseling to address his "personal issues," Mother's death, and his aggressive behavior; participate in parenting classes; participate in anger management classes; and take random drug tests.

**{4}** To address the causes and conditions of Children's abuse and neglect, CYFD referred Father to Zia Consulting for psychological evaluations, to the Guidance Center of Lea County for individual counseling to address his mental health issues, to Family Time Visitation Center for supervised visitations, and to two facilities for drug testing. CYFD also provided Father with a monthly bus pass, individual transportation when

needed, one-on-one parenting classes at home, and the opportunity to have supervised visitations at CYFD offices. However, Father failed to comply with his visitation obligations, was unable to demonstrate "appropriate parenting skills," refused to use the bus pass, missed court hearings because he overslept, continuously demonstrated issues controlling his anger, never completed the recommendations from his initial psychological evaluation, and refused to participate in individual counseling and an updated psychological evaluation

**{5}** Following a permanency hearing, the district court changed the concurrent plan to a plan of adoption. On January 26, 2018, CYFD moved to terminate Father's parental rights (TPR motion). In support of its TPR motion, CYFD explained that Father was "unable or unwilling to provide proper parental care or control for [Children]" and that while CYFD "provided or made available services and support designed to correct this inability or unwillingness, [Father] has either not utilized these services and support, or has been unable or unwilling to benefit sufficiently from them." The district court held another permanency hearing, after which time it recognized CYFD's efforts towards the reunification of Children with Father, as well as Father's failure to comply with the treatment plan. Thereafter, the district court found that a plan of adoption was "appropriate" and "in the best interests of [Children]."

**{6}** Following a hearing on CYFD's TPR motion, the district court concluded CYFD had shown by clear and convincing evidence "that the conditions and causes of the abuse and neglect against . . . Children by Father are unlikely to change in the foreseeable future despite reasonable efforts by CYFD to assist Father in adjusting the conditions which render Father unable to care for . . . Children properly." Accordingly, the district court ordered the termination of Father's parental rights to Children. Father appeals the district court's judgment.

**{7}** Because this is a decision and the parties are familiar with the facts of this case, we reserve further discussion of the pertinent facts to our discussion of Father's arguments.

## DISCUSSION

**{8}** Father challenges the reasonableness of CYFD's efforts to assist him in remedying the conditions and causes his neglect and abuse as well as the amount of time CYFD made those efforts before it moved to terminate his parental rights. We address each argument in turn.

### A.     Standard of Review

**{9}** NMSA 1978, Section 32A-4-28(B)(2) (2005), of the Abuse and Neglect Act (ANA) provides that the district court shall terminate parental rights if:

> the child has been neglected or abused as defined in the [ANA] and the
> court finds that the conditions and causes of the neglect and abuse are

unlikely to change in the foreseeable future despite reasonable efforts by [CYFD] to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

CYFD must demonstrate these elements by clear and convincing evidence. *State ex rel. Children, Youth & Families Dep't v. Nathan H.*, 2016-NMCA-043, ¶ 31, 370 P.3d 782. "Clear and convincing evidence means evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *Id.* (internal quotation marks and citation omitted).

**{10}** "Our standard of review is . . . whether, viewing the evidence in the light most favorable to [CYFD], the fact finder could properly determine that the clear and convincing evidence standard was met." *State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 38, 421 P.3d 814 (internal quotation marks and citation omitted). "Our standard of review does not require us to determine whether the district court could have reached a different conclusion." *Id.* (alteration, internal quotation marks, and citation omitted). "Furthermore, [the appellate courts are] not permitted to reweigh the evidence." *Id.* (internal quotation marks and citation omitted).

## B. Reasonable Efforts by CYFD

**{11}** CYFD's "efforts should be directed to assist the parent in remedying the conditions and causes of neglect and abuse." *Id.* ¶ 41. We consider "the totality of the circumstances when reviewing the district court's determination" that CYFD made reasonable efforts to assist the parent. *Id.* "Efforts to assist a parent may include individual, group, and family counseling, substance abuse treatment, mental health services, transportation, child care, and other therapeutic services." *Id.* (internal quotation marks and citation omitted). "[W]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Id.* (internal quotation marks and citation omitted). "[O]ur job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 28, 132 N.M. 299, 47 P.3d 859.

**{12}** To be sure, a parent may "impeach the reasonableness of efforts to enable him or her to correct the underlying causes and conditions on the basis that those efforts were directed at the wrong causes and conditions or were insufficient because of unique factors." *State ex rel. Human Servs. Dep't v. Penny J.*, 1994-NMCA-143, ¶ 20, 119 N.M. 328, 890 P.2d 389. Here, the district court found that Children's abuse and neglect were caused by issues associated with Father's parenting skills, his medications, and his "mental disorders." CYFD's efforts—namely, providing parenting classes and supervised visitations, and referring Father for psychological evaluations, individual counseling, and drug testing—were directed at these causes.

**{13}** Father, however, failed to fully engage with the services provided by CYFD. Although he completed the parenting classes, he did not apply "the most important" skills taught in the classes. Furthermore, although Father made some efforts to attend the visitations despite having back pain and not owning a vehicle, he missed approximately thirty percent of the visitations, some of which were missed for no stated reason. While Father missed some visitations because of his "transportation issues," CYFD provided him with a bus pass for a period of five months, gave him personal rides when he needed them, and assisted him with a taxi service paid for by CYFD. However, Father did not use and declined to renew his bus pass, and did not usually give CYFD "reasonable notice" when he needed a ride for visitations.

**{14}** In light of CYFD's efforts and Father's conduct, we conclude that substantial evidence of a clear and convincing nature supported the district court's finding that CYFD made reasonable efforts to address the causes and conditions of abuse and neglect. *See Keon H.*, 2018-NMSC-033, ¶¶ 38, 41, 48 (providing the clear and convincing standard and explaining that "what constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting[,]" and that "[b]oth [CYFD] and [the f]ather are responsible for making efforts toward reunification of the family" (internal quotation marks and citation omitted)). Moreover, to the extent Father argues CYFD was required to make more intensive efforts to address his substance abuse and mental health issues, we again emphasize that "our job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law." *Patricia H.*, 2002-NMCA-061, ¶ 28. We conclude that it did.

**{15}** Further, Father argues the district court erred in considering "stereotyped values" concerning his substance abuse. He argues "the stereotyped values blamed Father for his circumstances, either substantially ignoring Father's addiction—at least in terms of real assistance—or blaming him for it." Although we do not review unclear or undeveloped arguments, *see State ex rel. Children, Youth & Families Dep't v. Marsalee P.*, 2013-NMCA-062, ¶ 20, 302 P.3d 761, we nonetheless conclude Father's argument is unavailing on its merits. Children's abuse and neglect was attributable, at least in part, to Father's use of medications, which rendered him unavailable to care for Children during the day. To address this cause of Children's abuse and neglect, CYFD monitored Father's medication intake by requiring drug tests and referred him for psychological evaluation.

**{16}** Father also argues that the evaluation of his parenting skills were the subject of stereotyped values. To address this cause of Children's abuse and neglect, CYFD provided Father with one-on-one, in-home parenting classes. Despite Father completing these classes, he failed to apply "the most important" skills taught in the classes, namely, responding when a child needs an emotional connection or interaction. The assigned CYFD social worker, testified that she received a master's degree in social work, which involved coursework in child growth and development, worked as a social worker with CYFD for four years, and frequently provides parents with information about

how to parent and how to interact with their children. The social worker further testified that Father should have fully attended to Children's needs, communicated and played with them, held them, and not set the infant child down for prolonged periods of time because of the potential for attachment issues. Further, she testified that Father should not have the oldest child, age three, care for the eight-month-old child, or for Father, as doing so was not safe and was inappropriate for her age. She additionally testified that Father ignored Children when they tried getting his attention, missed several visitation opportunities, did not attend the oldest child's developmental therapy sessions, did not give Children gifts for their birthdays or for Christmas, and would have the oldest child bring things to him or the youngest child because of his untreated back pain. We therefore cannot conclude the district court relied on stereotyped values in finding CYFD made reasonable efforts to address the causes and conditions of Children's abuse and neglect. *See Keon H.*, 2018-NMSC-033, ¶ 38 ("Our standard of review is . . . whether, viewing the evidence in the light most favorable to [CYFD], the fact finder could properly determine that the clear and convincing evidence standard was met. Our standard of review does not require us to determine whether the district court could have reached a different conclusion." (alteration, internal quotation marks, and citations omitted)); *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833 (explaining that we do not "assess the credibility of the witness, deferring instead to the conclusions of the trier of fact[,]" and that we "will not substitute our judgment for that of the [district] court as to any factual matter").

## C. The Amount of Time Before CYFD Moved to Terminate Father's Parental Rights

**{17}** Father also argues the amount of time before CYFD moved to terminate his parental rights "is per se insufficient to demonstrate reasonable efforts." In support of his argument, Father cites *Patricia H.*, wherein this Court noted that "states are not required to make reunification efforts for an indefinite period of time" and concluded that "[t]he fifteen-month period described in [the Adoption and Safe Families Act] for time-limited reunification services provides us some guidance in how we assess the duration of reasonable efforts under state law." 2002-NMCA-061, ¶ 26 (internal quotation marks omitted). However, we emphasized "that the use of such a guideline needs to remain flexible and must be harmonized with the requirements of state law." *Id.*

**{18}** New Mexico law does not require CYFD to wait a minimum amount of time before filing a motion to terminate parental rights. *See* NMSA 1978, § 32A-4-29(A) (2009) ("A motion to terminate parental rights may be filed *at any stage* of the abuse or neglect proceeding by a party to the proceeding." (emphasis added)); *see also* NMSA 1978, § 32A-1-3(A) (2009) ("A child's health and safety shall be the paramount concern."); § 32A-4-28(A) ("In proceedings to terminate parental rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child[.]"). In light of Father's failure to comply with his visitation obligations, his inability to demonstrate "appropriate parenting skills," his failure to complete the recommendations from his initial psychological evaluation, and his refusal to participate in individual counseling and an updated psychological evaluation, CYFD's motion to

terminate his parental rights is not "per se insufficient to demonstrate reasonable efforts."

**CONCLUSION**

**{19}** For the foregoing reasons, we affirm the district court's judgment terminating Father's parental rights to Children.

**{20} IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**JACQUELINE R. MEDINA, Judge**